Elizabeth Hamon et al. *v.* Patsy T. Digliani et al.

Baldwin, C. J., King, Murphy, Shea and Bordon, Js.

Argued June 8—decided October 3, 1961

*John F. Phelan,* for the appellant (named plaintiff).

*Kevin T. Gormley,* with whom, on the brief, was *Martin E. Gormley,* for the appellees (defendants Lestoil Corporation et al.).

MURPHY, J.   The named plaintiff, alleging that she was severely burned and otherwise injured when the contents of a bottle of Lestoil, a household detergent, spilled on her, brought suit against the named defendant, a retail storekeeper from whom she had purchased it, and against Lestoil Corporation and the Adell Chemical Company, the manufacturers of the product, hereinafter referred to as the defendants, to recover damages for the injuries allegedly sustained.   In the second count of her complaint, she alleged that the defendants had extensively promoted Lestoil by radio, television, newspaper and other advertising which impliedly warranted that it could be used safely for household and other cleaning tasks and also expressly warranted that it was "the all-purpose detergent—for all household cleaning and laundering." She further alleged that she purchased a bottle of Lestoil in reliance on the claims made in the advertisements; that the bottle had been sealed, capped and packaged by the defendants; that the product was not as warranted; that some of it spilled on her, causing her injuries; and that the defendants committed a breach of both the express and the implied warranties. The defendants demurred to this count on the sole ground that no privity of contract nor any sale between them and the named plaintiff, hereinafter

called the plaintiff, was alleged. The court sustained the demurrer. Judgment was rendered for the defendants on the second count, and the plaintiff has appealed.

In other counts of the complaint, the plaintiff seeks recovery from the retailer for breach of express and implied warranties, and from the retailer and the defendants for negligence. As these counts are not affected by the judgment on the demurrer, they remain to be tried when issue is joined. The plaintiff, by her appeal, is endeavoring to change the rule, which has existed in this state at least since *Welshausen* v. *Charles Parker Co.*, 83 Conn. 231, 76 A. 271, that in order to sustain an action for breach of express or implied warranty there has to be evidence of a contract between the parties, for without a contract there could be no warranty. We held in that case (p. 233) that the ultimate purchaser, or subvendee, of a gun manufactured by the defendant had no cause of action for breach of warranty against the manufacturer, with whom he had not dealt directly, but who had sold the gun to a dealer, who in turn sold it to a third party, from whom the plaintiff purchased it. The rule was reiterated in *Borucki* v. *MacKenzie Bros. Co.*, 125 Conn. 92, 96, 3 A.2d 224, wherein we quoted from *Gearing* v. *Berkson*, 223 Mass. 257, 260, 111 N.E. 785, as follows: "The implied warranty, or to speak more accurately the implied condition of the contract, to supply an article fit for the purpose required, is in the nature of a contract of personal indemnity with the original purchaser. It does not 'run with the goods.'" As we understand the argument advanced by the plaintiff, it is that, despite the lack of a sale directly from the manufacturer, the consumer should have a right of action against

the manufacturer for breach of express or implied warranty where the consumer, in reliance on the representations made by the manufacturer, purchases a sealed container of the manufacturer's product from a retailer and sustains injury as the result of the use of the product in the manner intended.

Within recent years, numerous cases have arisen in other jurisdictions in which the courts have extended breach of warranty law to encompass a right of action against the manufacturer for breach of either an express or an implied warranty of his product and have eliminated privity of contract as an element essential to recovery. Dean Prosser, in an extensive review of the cases and trends in this regard, points out that the privity requirement was abolished by judicial fiat in cases involving the sale of food and that since 1934 thirteen jurisdictions have applied against the manufacturer a rule of strict liability for statements which prove to be false, if they were made to the public in labels on the goods or in the manufacturer's advertising or disseminated literature and it can be found that the plaintiff relied on the statements in making his purchase. Prosser, "The Assault upon the Citadel (Strict Liability to the Consumer)," 69 Yale L.J. 1099, 1124, 1135. The citations of the cases and the names of the products concerned may be found in footnotes 212, 213 and 214 of the article. Id., 1135, 1136. Since its publication, the Court of Appeals of New York, in *Greenberg* v. *Lorenz,* 9 N.Y.2d 195, 173 N.E.2d 773, has ruled in a food case that lack of privity did not bar recovery by a child when the food had not been purchased by her but by her father. As, in Connecticut, the protection of the implied warranty of fitness of food and drink ex-

tended, under General Statutes § 42-16 (repealed, Public Acts 1959, No. 133, § 10-102; see §§ 42a-2-315, 42a-2-318), to all persons for whom the purchase was intended, the New York case has no particular bearing on the questions before us. It does, however, indicate an extension of the rule in a jurisdiction which lacked such a statute. Also, the opinion states (p. 199) that about twenty states have abolished the requirements of privity, the latest being Virginia and New Jersey.

The Virginia case, *Swift & Co.* v. *Wells*, 201 Va. 213, 110 S.E.2d 203, was a suit by a consumer who became ill as the result of eating a meat product which had been processed and packaged by the packer and was purchased from a retail market. The court held that a manufacturer of food who sells it in sealed containers or packages to a retailer, who in turn sells it to a consumer, who becomes ill from impurities in the food upon eating it, is liable to the consumer for a breach of an implied warranty of wholesomeness, irrespective of the lack of privity between the parties. Id., 221. The New Jersey case, *Henningsen* v. *Bloomfield Motors, Inc.*, 32 N.J. 358, 161 A.2d 69, involved an automobile sold by a dealer to Claus Henningsen. His wife sustained injuries while driving it when defects in the steering mechanism caused it to veer into a brick wall. She instituted suit against the dealer and the manufacturer and recovered against both for breach of an implied warranty of merchantability, despite the limited extent of the express warranty by the manufacturer that it would replace a defective part within ninety days after the sale or until the car had been driven 4000 miles, whichever occurred first, if the part was returned to the factory, and despite the disclaimer of liability

by the manufacturer on that basis. Id., 384, 404. The New Jersey case held that the implied warranty of merchantability chargeable to either the manufacturer or the dealer extends to the purchaser, the members of his family, and other persons who use the automobile with the owner's consent. Id., 414. An annotation on this subject is to be found in 75 A.L.R.2d 39.

The representation made by a manufacturer on the packages of its detergent was held to be a warranty to the ultimate consumer in *Worley* v. *Proctor & Gamble Mfg. Co.,* 241 Mo. App. 1114, 1122, 253 S.W.2d 532, despite the absence of privity between the parties. Similarly, it was held in *Rogers* v. *Toni Home Permanent Co.,* 167 Ohio St. 244, 249, 147 N.E.2d 612, that the representations made by the manufacturer of a home permanent lotion in its advertisements, on which the plaintiff relied, constituted an express warranty for breach of which the plaintiff could maintain her action, although there was no contractual relationship between her and the manufacturer. In *Markovich* v. *McKesson & Robbins, Inc.,* 106 Ohio App. 265, 149 N.E.2d 181, the plaintiff was induced to purchase and use a home permanent preparation through the representations made by the manufacturer, Prom Cosmetics, in radio broadcasts of its product. The court held (p. 271) that Prom Cosmetics would be liable for breach of an express warranty if the product did not comply with the representations made and the health of the user was endangered when the product was used as directed by the manufacturer. The court also stated (p. 275) that the law, under the circumstances, would imply a warranty which became an obligation of the manufacturer or producer inducing the purchase.

These cases, and others of similar import, rely on the original concept of an action for breach of warranty, that is, that it sounds in tort and is based on the plaintiff's reliance on deceitful appearances or representations rather than on a promise. 1 Williston, Sales (Rev. Ed.) § 195; Prosser, Torts (2d Ed.) p. 507; Williston, "The Progress of the Law, 1919-1920 (Sales)," 34 Harv. L. Rev. 741, 762. The recognition of such a right of action rested on the public policy of protecting an innocent buyer from harm rather than on the ensuring of any contractual rights. *Rogers* v. *Toni Home Permanent Co.*, supra 247; *Jacob E. Decker & Sons, Inc.* v. *Capps*, 139 Tex. 609, 612, 164 S.W.2d 828; *Patargias* v. *Coca-Cola Bottling Co. of Chicago, Inc.*, 332 Ill. App. 117, 132, 74 N.E.2d 162. With the development of the merchandising concepts of the past quarter of a century, the ultimate consumer rarely has the opportunity to inspect the goods offered for sale. That was not the case when the Sales Act was adopted in Connecticut as chapter 212 of the Public Acts of 1907. Originally drafted to govern the relations between the immediate buyer and seller, two of the implied warranties of quality were expanded in 1939 and 1951 so that all members of the buyer's household were covered. Cum. Sup. 1939, § 1276e; Cum. Sup. 1955, § 2858d (General Statutes § 42-14, repealed, Public Acts 1959, No. 133, § 10-102; see §§ 42a-2-314, 42a-2-315, 42a-2-318). In the latter year, legislation was also enacted imposing an implied warranty of fitness of food and drink for consumption on or off the premises for the benefit of the buyer and all persons for whom the purchase was intended. Cum. Sup. 1955, § 2859d (General Statutes § 42-16, repealed, Public Acts 1959, No. 133, § 10-102; see §§ 42a-2-315, 42a-2-318).

The neighborhood storekeeper who called all of his customers by their first names and measured or weighed out the desired amount of the commodity ordered before packaging it has practically disappeared from the commercial world. Where one occasionally survives, his method of displaying and dispensing his wares has radically changed. The shelves and showcases in his store contain, for the most part, packages and containers which have been packed and sealed by the manufacturer or by a producer who puts out as his own the products made by another. Neither the retailer nor the consumer can sample or otherwise examine the product. The maxim "caveat emptor" has become a millstone around the necks of dealer and customer. While the customer may maintain an action under the Sales Act against the retailer for breach of implied warranty, the dealer in turn must sue his supplier to recoup his damages and costs where the customer prevails. Eventually, after several separate and distinct pieces of costly litigation by those in the chain of title, the manufacturer is finally obliged to shoulder the responsibility which should have been his in the first instance.

The supermarkets and other retail outlets of our day dispense with the need for clerks behind counters to wait on customers. The goods are displayed on shelves and counters lining the aisles, and the customer, as he searches for a product, is bewitched, bewildered and bedeviled by the glittering packaging in riotous color and the alluring enticement of the products' qualities as depicted on labels. The item selected is apt to be the one which was so glowingly described by a glamorous television artist on the housewife's favorite program, just preceding the shopping trip. Or the media of advertising

might have been radio, magazine, billboard or newspaper. All are widely used in the appeal directed to the ultimate consumer. There appears to be no sound reason for depriving a plaintiff of the right to maintain an action against the manufacturer where the plaintiff alleges that he was induced to purchase the product by the representations in the manufacturer's advertising and that he sustained harm when the product failed to measure up to the express or implied representations. This principle finds ample support in *Blake* v. *Watson,* 45 Conn. 323, 325, although the parties therein were buyer and seller.

The manufacturer or producer who puts a commodity for personal use or consumption on the market in a sealed package or other closed container should be held to have impliedly warranted to the ultimate consumer that the product is reasonably fit for the purpose intended and that it does not contain any harmful and deleterious ingredient of which due and ample warning has not been given. See *Crotty* v. *Shartenberg's-New Haven, Inc.,* 147 Conn. 460, 467, 162 A.2d 513. Where the manufacturer or producer makes representations in his advertisements or by the labels on his products as an inducement to the ultimate purchaser, the manufacturer or producer should be held to strict accountability to any person who buys the product in reliance on the representations and later suffers injury because the product fails to conform to them. *Rogers* v. *Toni Home Permanent Co.,* 167 Ohio St. 244, 249, 147 N.E.2d 612; see Prosser, Torts (2d Ed.) p. 506; Williston, Sales (Rev. Ed.) § 244 & Cum. Sup. § 244d. Lack of privity is not a bar to suit under these circumstances.

We point out that we are concerned here only

with the sufficiency of the second count to withstand demurrer and not with the proof which will be required on the trial.

There is error, the judgment is set aside and the cause is remanded with direction to overrule the demurrer.

In this opinion the other judges concurred.