FREDERICK J. CONNOLLY v. JOHN HAGI ET AL.

SUPERIOR COURT      HARTFORD COUNTY      FILE No. 120413

Memorandum filed February 28, 1963

*Lessner, Rottner & Karp,* of Manchester, for the plaintiff.

*Warren Maxwell, Edward J. Foley,* and *Tarlow, Poulos & Lawrence,* of Hartford, for the named defendant.

*Halloran, Sage & Phelon,* of Hartford, for defendant Chrysler Corporation.

KLAU, J. This is an action for damages for personal injuries which the plaintiff, an employee of a gasoline station, alleges he suffered on May 29, 1959, while preparing to repair the rear backup lights of a 1958 Plymouth, manufactured by the defendant Chrysler Corporation, when the defendant Hagi, the owner and operator of the car, pushed the automatic push-button transmission for reverse drive, causing the car to jump backwards and to strike and pin the plaintiff under the vehicle.

The complaint is in two counts. The first count alleges negligence against both of the defendants, Hagi and the Chrysler Corporation. The second count is against the Chrysler Corporation alone and is based on an alleged breach of express and implied

warranties that the motor vehicle which injured the plaintiff was safe and fit for its intended use. The defendant Chrysler Corporation demurs to the second count on the ground that insofar as it purports to state a cause of action for a breach of warranty, it fails to allege facts that would establish the existence of privity of contract between the plaintiff and the defendant. In his argument, the plaintiff concedes that there is no privity of contract between himself and the defendant manufacturer and concedes that if privity is essential to the maintenance of the action set forth in the second count, the count is fatally defective. The plaintiff contends, however, that the requirement of privity is not essential to his cause of action.

The demurrer admits all facts which are well pleaded. Allegations in the pleadings for the purpose of testing their sufficiency under the demurrer are to be liberally construed. Stephenson, Conn. Civ. Proc., § 94(d). All references to allegations in the complaint refer only to allegations contained in the second count.

The plaintiff alleges in his complaint that 1958 Plymouth motor vehicles were offered for sale by the defendant manufacturer to dealers for purpose of resale to the general public with the representation that they were designed, manufactured and assembled in a safe, good and workmanlike manner, free from defects, and that such representations were widely and extensively advertised and publicized. The complaint further alleges that prior to October 24, 1958, the defendant designed and manufactured a 1958 Plymouth, Belvedere model, equipped with automatic push-button drive or transmission, which motor vehicle was, on or about October 24, 1958, sold to the defendant John Hagi by an authorized dealer of the defendant corporation.

It is further alleged that from October 24, 1958, to May 29, 1959, the defendant Hagi owned and operated the said Plymouth car and that on May 29, 1959, he drove it into a gasoline station in East Hartford where the plaintiff was employed and requested the plaintiff to inspect and repair the back-up lights on the rear of the car. While the plaintiff was in close proximity to the rear of the car, the defendant Hagi, who was still in the car, drove it so as to strike the plaintiff and to crush and pin him under the vehicle, causing extensive and crushing injuries to his spine and neck, and fractures of the dorsal vertebra and many other parts of his body, which have resulted in permanent physical disability and impairment of his earning capacity.

The complaint alleges that these injuries were caused by the lurching or "jumping" of the motor vehicle backwards, upon the mere pushing of the reverse button of the automatic transmission by the defendant Hagi when the motor was running. The complaint alleges that the 1958 Plymouth which the defendant Hagi had purchased from an authorized dealer of the defendant manufacturer had the dangerous tendency and characteristic of lurching, jumping, or moving backwards with great force and momentum upon the mere pushing in of the reverse button of the automatic transmission when the motor was running. The complaint alleges that the defendant manufacturer, by means of extensive advertisements through the medium of radio, television, newspapers, etc., impliedly and/or expressly warranted to the defendant Hagi and to the plaintiff, as a gasoline station employee, that the said motor vehicle, as well as all others manufactured by it, was safe and fit for its intended use and that in reliance and as a consequence of said massive advertising of the defendant Chrysler Corporation, the defendant John Hagi purchased said car. Sim-

ilarly in reliance on and as a consequence of such massive advertising, the plaintiff proceeded to service the motor vehicle as he had been requested to do by the defendant Hagi. The complaint then alleges that the defective, unsafe and dangerous lurching and jumping of the car under the conditions stated constituted a breach of warranty to the plaintiff, and as a result of such breach, the plaintiff sustained the injuries indicated. Notice of such injuries was given on June 26, 1959 and duly acknowledged.

The issue simply stated is this: May an automobile repairman injured by a defectively manufactured automobile maintain a cause of action for breach of warranty, for injuries sustained, against the manufacturer of the automobile with whom he is not in privity and who had by means of massive advertising, upon which both the purchaser and the plaintiff repairman had relied before proceeding to repair the vehicle, represented that automobiles manufactured by it were safe and fit for their intended use? Plaintiff's counsel admits that he is unable to find any reported case permitting the maintenance of a cause of action similar to the one alleged in the second count, but urges that a logical extension of the principle laid down in *Hamon* v. *Digliani*, 148 Conn. 710, gives a legal foundation to his allegations. Certainly, prior to the *Hamon* case, the law in this state was clear that no action could be maintained for injuries arising out of an alleged breach of warranty, either of merchantability or of use, without the essential element of privity of contract existing between the plaintiff and the defendant. *Welshausen* v. *Charles Parker Co.*, 83 Conn. 231; *Borucki* v. *MacKenzie Bros. Co.*, 125 Conn. 92; *Duart* v. *Axton-Cross Co.*, 19 Conn. Sup. 188. Indeed, it was necessary to secure legislation in 1939 and 1951 extending the implied warranties

of quality to members of the purchaser's household; Cum. Sup. 1939, § 1276e; Cum. Sup. 1955, § 2858d (General Statutes § 42-14, repealed, Public Acts 1959, No. 133, § 10-102); and in 1955 imposing an implied warranty of fitness of food and drink for consumption on and off the premises for the buyer and all persons for whom the purchase was intended. Cum. Sup. 1955, § 2859d (General Statutes § 42-16, repealed, Public Acts 1959, No. 133, § 10-102).

Prior to the *Hamon* case, supra, actions for personal injuries arising from a breach of warranty were confined, owing to the necessity for privity between the parties, to actions between the immediate purchaser and the seller, broadened slightly to the members of the buyer's household. The warranty was regarded as in the nature of a contract of personal indemnity with the original purchaser. It did not run with the goods. 2 Harper & James, Torts, p. 1571. Such a limited view did not meet the exigencies of modern life. The difficulty of proving negligence and failure of inspection by the manufacturer placed an almost impossible burden of proof on the injured plaintiff. The rule requiring privity of contract between the parties likewise proved inequitable. Following a growing trend in many jurisdictions, our Supreme Court of Errors held in *Hamon* v. *Digliani,* supra, that the manufacturer or producer who put a commodity for personal use or consumption on the market in a sealed package or other closed container impliedly warranted to the ultimate consumer that the product was reasonably fit for the purpose intended and that it did not contain any harmful and deleterious ingredient of which due and ample warning had not been given. Where the manufacturer or producer made representations in his advertisements, or by the labels on his products, as an

inducement to the ultimate purchaser, the manufacturer or producer was to be held to strict accountability to any person who bought the product in reliance on the representations and later suffered injury because the product failed to conform to them. Lack of privity of contract was not a bar to suit under these circumstances. The *Hamon* case represents a definite breach in the wall of privity which isolated the manufacturer from suit by an ultimate purchaser.

The case of *Henningsen* v. *Bloomfield Motors, Inc.,* 32 N.J. 358, represents an even greater leveling of the wall of privity, in holding the manufacturer to a stricter liability than that of negligence. The *Henningsen* case, cited in the *Hamon* case, supra, 714, extended the protection of warranties of merchantability and of fitness against the manufacturer, as a matter of public policy, despite a disclaimer by the manufacturer, to the wife of the retail purchaser who was injured when the car, because of a defectively manufactured steering wheel, ran off the highway, although the plaintiff wife was not in privity of contract with the defendant manufacturer.

"The precise issue presented is whether Mrs. Henningsen, who is not a party to their respective warranties, may claim under them. In our judgment, the principles of those cases and the supporting texts are just as proximately applicable to her situation. We are convinced that the cause of justice in this area of the law can be served only by recognizing that she is such a person who, in the reasonable contemplation of the parties to the warranty, might be expected to become a user of the automobile. Accordingly, her lack of privity does not stand in the way of prosecution of the injury suit against the defendant Chrysler. . . . It is

important to express the right of Mrs. Henningsen to maintain her action in terms of a general principle. To what extent may lack of privity be disregarded in suits on such warranties? . . . [I]t is our opinion that an implied warranty of merchantability chargeable to either an automobile manufacturer or a dealer extends to the purchaser of the car, members of his family, and to other persons occupying or using it with his consent. It would be wholly opposed to reality to say that use by such persons is not within the anticipation of parties to such a warranty of reasonable suitability of an automobile for ordinary highway operation. Those persons must be considered within the distributive chain. Harper and James suggest that this remedy ought to run to members of the public, bystanders, for example, who are in the path of harm from a defective automobile. *2 Harper & James, supra, note 6, p.* 1572. Section 2-318 of the Uniform Commercial Code proposes that the warranty be extended to 'any natural person who is in the family or household of his buyer or who is a guest in his home if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty.' And the section provides also that 'A seller may not exclude or limit the operation' of the extension. A footnote thereto says that beyond this provision 'the section is neutral and is not intended to enlarge or restrict the developing case law on whether the seller's warranties, given to his buyer, who resells, extend to other persons in the distributive chain.' *Uniform Commercial Code, supra,* at *p.* 100." *Henningsen* v. *Bloomfield Motors, Inc., supra,* 413, 414; see also note, "Privity of contract as essential to recovery in action based on theory other than negligence, against manufacturer or seller of product alleged to have caused injury," 75 A.L.R.2d 39, 88, § 15.

The question arises, then, what test is to be used in determining whether a plaintiff, injured by a defectively manufactured chattel, shall be regarded as within the distributive chain? It would appear that the warranty should be extended to all those who could reasonably be anticipated to use, occupy or service the operation of the chattel. It is unrealistic to protect the wife of the purchaser, his guest in the car, but not the mechanic to whom he brings the car for purposes of service in connection with its operation. It is true that no court has yet so decided. In the case of *Courtois* v. *General Motors Corporation,* 37 N.J. 525, 547 (1962), the New Jersey Supreme Court reserved for decision, at an appropriate time, the question whether a third person, situated as was the plaintiff in that suit, could maintain an action for breach of warranty for injuries sustained when a wheel came off a truck tractor manufactured by the defendant and collided with a truck driven by the plaintiff. The court conceded that the *Henningsen* case, supra, had not specifically dealt with such a problem.

Nevertheless, the protection of the automobile repairman against dangers of a defectively manufactured motor vehicle is a logical development of the modern trend of employing warranties of merchantability and use as a matter of public policy. The necessity of a contract of sale between the parties is disappearing. It is the ultimate consumer who is to be protected. The plaintiff may be regarded as an ultimate consumer within this concept. *Revlon, Inc.* v. *Murdock,* 103 Ga. App. 842. Furthermore, the complaint alleges that the plaintiff proceeded to repair the automobile and did so in reliance upon, and as a consequence of, the massive advertising of the defendant manufacturer, through all media, that the car was safe for its in-

tended use. In the *Hamon* case, supra, 718, such massive advertising and reliance thereon by the plaintiff were one of the circumstances for the imposition of the warranties upon the manufacturer even though there was a lack of privity. See *Rogers* v. *Toni Home Permanent Co.,* 167 Ohio St. 244; note, "Statements in advertisements as affecting manufacturer's or seller's liability for injury caused by product sold," 75 A.L.R.2d 112, 128-140, §§ 11-13 (with respect to advertisements as affecting liability for breach of warranty); *General Motors Corporation* v. *Dodson,* 47 Tenn. App. 438, cert. denied (Tenn. Sup. Ct.); *Pritchard* v. *Liggett & Myers Tobacco Co.,* 295 F.2d 292, 296 (3d Cir.).

"As the accident toll of modern life has increased, the urge towards strict liability has grown. Many older forms of liability were vehicles for such a principle but none of them is well adapted to solving our present accident problem. Warranty is a case in point. This was fashioned to serve commercial needs in a commercial context, and however well or ill adapted it is to that end today, its technicalities and limitations reflect those needs. If it occasionally happens to fit the needs of accident law, that is pure coincidence. As a general proposition it does not. If strict liability should be imposed in these cases as a matter of policy, there is no more reason than there is in connection with the negligence doctrine to confine the scope of liability to those in privity of agreement. The need for protection is as wide as the likelihood of this kind of harm, and all such harm may fairly be regarded as a casualty of the supplier's enterprise. Not only the rule of privity, but also many other limitations on warranty liability which we have treated here, are out of place in the context of accident law. They would all be abandoned in a rational scheme of strict liability for injurious products. In some cases

this may require legislation. Yet the concept of the warranty implied in law on grounds of policy was devised by courts in the past to meet commercial needs. Why should not the courts of today —entirely within the tradition of a dynamic common law—develop a warranty theory in products liability cases which is tailored to meet modern needs in that field—at least where existing legislation does not positively and clearly forbid such a development? To some extent this has taken place. The process should and no doubt will continue." 2 Harper & James, Torts, p. 1606.

The demurrer of the defendant to the second count of the plaintiff's complaint is overruled.