RUTH H. MITCHELL, EXECUTRIX (ESTATE OF BURNELL R. MITCHELL) *v.* HORACE G. MILLER ET AL.

SUPERIOR COURT  NEW HAVEN COUNTY  FILE No. 108146
AT NEW HAVEN

Memorandum filed October 13, 1965

*Fay & Lunt,* of Wallingford, for the plaintiff.

*David E. FitzGerald, Jr.,* of New Haven, for defendant General Motors Corporation.

*John C. Flanagan,* of New Haven, for defendants Horace G. Miller and Nancy Backman.

*Joseph M. Delaney,* of Wallingford, for defendant Wallingford Country Club, Inc.

KLAU, J. The defendant General Motors Corporation demurs to the third count of the complaint on the ground that no cause of action for breach of the warranty may lie against this defendant, as no privity exists between the plaintiff's decedent and said defendant.

This is an action for damages arising from injuries which resulted in the death of Burnell R. Mitchell, the decedent of the plaintiff executrix, allegedly caused by the defendants Nancy Backman, her father, Horace G. Miller, Wallingford Country Club, Inc., and General Motors Corporation. The allegations of the first count are based on the negligence of the defendants Wallingford Country Club, Horace G. Miller and Nancy Backman. In substance, the first count sets forth that the defendant Nancy Backman had parked a car upon the parking area of the defendant Wallingford Country Club, which parking area overlooks the seventeenth fairway of the golf course of said defendant country club. The car, a 1962 Buick automobile, had been manufactured by defendant General Motors and was parked on a slope overlooking said fairway and so left there by defendant Backman, who was driving the car as a family car of the defendant Horace G. Miller. In parking the car, the defendant Backman placed the hydromatic transmission gearshift lever in the area designated "park" on the indicator and locked all of the doors to the car. Despite the fact that the automobile hydromatic gearshift mechanism was placed in the

area marked "park" on the indicator, the shifts were not locked therein and the transmission was only partially engaged. Being parked on an incline, the transmission became disengaged, and the shift lever slipped into the "neutral" position, thereby allowing the automobile to roll. The car so parked rolled down the incline, striking the plaintiff's decedent, Burnell R. Mitchell, while he was playing golf upon the seventeenth fairway, with such force as to cause injuries from which he died.

The second count against the defendant General Motors Corporation solely alleges acts of negligence in manufacturing and in selling, through its authorized dealer, a defective automobile to the defendant Horace G. Miller, which defect, by reason of the aforementioned failure of the transmission to lock when parked, rendered the car inherently and imminently dangerous to the public and to the plaintiff's decedent and resulted in injuries which caused his death.

The third count alleges that the defendant General Motors Corporation, as a manufacturer, through extensive advertisements by means of radio, television, newspapers, etc., impliedly and expressly warranted to the defendant Miller, to the public generally, and to the decedent Mitchell as a member of the public that the said 1962 Buick automobile purchased by Miller was safe and fit for its intended use and safe operation, and contained no defects, dangerous tendencies or characteristics which would endanger the public, including the plaintiff's decedent, and in reliance thereon, said automobile was purchased by the defendant Miller; and the count further alleges that the unsafe and dangerous tendency and characteristics of the hydromatic gearshift mechanism in slipping from a "park" locking to a neutral position constituted breach of warranty

to the plaintiff's decedent, and that he suffered severe injuries from which he died as a result of said breach.

The demurrer of the defendant General Motors attacks the cause of action alleged in this third count. From the allegations of the third count, it is obvious that no privity existed between the plaintiff's decedent, Mitchell, and the defendant General Motors Corporation. It is further clear from the allegations of this count that the deceased Mitchell was not within the distributive chain of any sale originating from the manufacturer of the automobile, nor could he reasonably have been anticipated by this defendant to have been one who would use, occupy or service the operation of the automobile. It is clear from the allegations of the count that the deceased Mitchell was not a user but, on the contrary, a victim of an automobile which was defectively manufactured by the defendant, since the demurrer admits the allegations of the count which are well pleaded, and such facts are clearly to be drawn from the allegations. There being no sale, therefore, to trace back the decedent's connection with the chattel to the defendant General Motors Corporation, the question is whether liability can be imposed upon the basis of an implied warranty of a reasonable fitness for use from the defendant General Motors Corporation to the plaintiff's decedent, Burnell Mitchell, in the absence not only of privity between the parties but of a sale of the chattel upon which to base such a warranty.

Although the concept of warranty founded on contract is to be found in the Uniform Sales Act and the Uniform Commercial Code, the recent development of the law of product liability has reestablished the common-law action of breach of warranty sounding in tort rather than in contract. "The recognition of

such a right of action rested on the public policy of protecting an innocent buyer from harm rather than on the ensuring of any contractual rights." *Hamon* v. *Digliani,* 148 Conn. 710, 716. Although in the *Hamon* case the plaintiff happened to be a purchaser, the doctrine of tort liability based on warranty was extended to the wife of the purchaser; *Henningsen* v. *Bloomfield Motors, Inc.,* 32 N.J. 358; and to many plaintiffs who were not the purchasers of the products and with whom there was no contractual relationship, as between parties. *Delaney* v. *Towmotor Corporation,* 339 F.2d 4 (2d Cir.) (employee of prospective purchaser of defective forklift truck); *Putnam* v. *Erie City Mfg. Co.,* 338 F.2d 911 (5th Cir.) (plaintiff injured by defective wheelchair rented from druggist); *Greeno* v. *Clark Equipment Co.,* 237 F. Sup. 427 (N.D. Ind.) (employee of lessee of defective forklift truck purchased by still another party); *Montgomery* v. *Goodyear Tire & Rubber Co.,* 231 F. Sup. 447 (S.D.N.Y.) (navy personnel killed in crash of defective dirigible); *Chapman* v. *Brown,* 198 F. Sup. 78 (D. Hawaii), aff'd, 304 F.2d 149 (9th Cir.) (plaintiff injured when a borrowed hula skirt ignited); *Greenman* v. *Yuba Power Products, Inc.,* 59 Cal. 2d 57 (husband of purchaser injured by defective power tool); *Connolly* v. *Hagi,* 24 Conn. Sup. 198; *Suvada* v. *White Motor Co.,* 210 N.E.2d 182 (Ill.); *Schipper* v. *Levitt & Sons, Inc.,* 44 N.J. 70 (child of lessee of defective house owned by still another party); *Goldberg* v. *Kollsman Instrument Corporation,* 12 N.Y.2d 432, and *King* v. *Douglas Aircraft Co.,* 159 So. 2d 108 (Fla.) (passengers killed in airplane crash resulting from faulty equipment); see CCH 1965 Products Liability ¶ 1234; note, 75 A.L.R.2d 39.

in *Connolly* v. *Hagi,* supra, the court, in extending the liability in tort of the manufacturer to a serviceman, stated (p. 206): "It would appear that the

warranty should be extended to all those who could reasonably be anticipated to use, occupy or service the operation of the chattel. It is unrealistic to protect the wife of the purchaser, his guest in the car, but not the mechanic to whom he brings the car for purposes of service in connection with its operation." The liability has been extended to situations where no sale at all was involved, but rather a bailment. See *Simpson* v. *Powered Products of Mich., Inc.,* 24 Conn. Sup. 409; *Cintrone* v. *Hertz Truck Leasing & Rental Service,* 45 N.J. 434. "Although in these cases strict liability has usually been based on the theory of an express or implied warranty running from the manufacturer to the plaintiff, the abandonment of the requirement of a contract between them, the recognition that the liability is not assumed by agreement but imposed by law . . . and the refusal to permit the manufacturer to define the scope of its own responsibility for defective products . . . make clear that the liability is not one governed by the law of contract warranties but by the law of strict liability in tort. Accordingly, rules defining and governing warranties that were developed to meet the needs of commercial transactions cannot properly be invoked to govern the manufacturer's liability to those injured by its defective products unless those rules also serve the purposes for which such liability is imposed. . . . *Sales warranties serve this purpose fitfully at best."* (Italics supplied.) *Greenman* v. *Yuba Power Products, Inc.,* 59 Cal. 2d 57, 63.

In imposing liability upon manufacturers to ultimate consumers in terms of implied warranty even though no privity exists, the courts have used a convenient legal fiction to accomplish this result. Ordinarily, there is no contract in a real sense between a manufacturer and an expected ultimate consumer of his product. As a matter of public

policy, the law has imposed on all manufacturers a duty to consumers irrespective of contract or of privity relationship between them. The search for correct principles to delineate manufacturers' responsibility to consumers has found expression in the doctrine of tort and strict liability. The "strict tort liability" doctrine is "surely a more accurate phrase" than breach of implied warranty of suitability for use. *Goldberg* v. *Kollsman Instrument Corporation,* 12 N.Y.2d 432, 437.

The second Restatement of the Law of Torts adopts the basis of strict liability, in the case of the seller of products, for occasioning physical harm to a user or consumer. See Restatement (Second), 2 Torts § 402 A. The rule is one of strict liability, making the seller subject to liability to the user or consumer even though the seller has exercised all possible care in the preparation and sale of the product. The product, of course, must be not only defective but unreasonably dangerous to the user or consumer.

The question, then, is whether strict liability ought to be extended to one who is not in the category of one who is a user or consumer of the product, or whether it is to be confined solely to commercial transactions where injury results only to the user or ultimate consumer. In a caveat, the American Law Institute in its second Restatement of the Law of Torts expresses no opinion as to whether the rules stated in § 402 A may not apply to harm to persons other than users or consumers. In commenting upon this caveat, the Restatement states: "Thus far the courts, in applying the rule stated in this Section, have not gone beyond allowing recovery to users and consumers, as those terms are defined in Comment *l.* Casual bystanders, and others who may come in contact with the product, as in the

case of employees of the retailer, or a passer-by injured by an exploding bottle, or a pedestrian hit by an automobile, have been denied recovery. There may be no essential reason why such plaintiffs should not be brought within the scope of the protection afforded, other than that they do not have the same reasons for expecting such protection as the consumer who buys a marketed product; but the social pressure which has been largely responsible for the development of the rule stated has been a consumers' pressure, and there is not the same demand for the protection of casual strangers. The Institute expresses neither approval nor disapproval of expansion of the rule to permit recovery by such persons." Restatement (Second), 2 Torts § 402 A, comment o.

In the only reported case involving an injury to a nonuser in this state, the court refused to find that a cause of action, based on a warranty of fitness, existed, as against the used-car dealer from whom the car was purchased, in favor of a pedestrian who was injured as a result of a defect in the car existing at the time of the sale. The court, as a matter of public policy, was unwilling to extend the doctrine of strict liability in favor of a pedestrian against a used-car dealer. See *Kuschy* v. *Norris*, 25 Conn. Sup. 383. Since the decision in the *Kuschy* case, the Michigan Supreme Court has applied the doctrine of strict liability in favor of an innocent bystander who was injured when the barrel of a shotgun being fired by another party exploded because of a defective shell. *Piercefield* v. *Remington Arms Co.*, 375 Mich. 85.

The trend toward applying the doctrine of strict liability in the case of an injury arising from the manufacture of a product which may be unreasonably dangerous and from which the likelihood of

injury arising from its use is reasonably foreseeable is expanding. Foreseeable or reasonable anticipation of injury from the defect is becoming the test. Reliance on representations or notice of injury are no longer absolute conditions precedent. See *Santor* v. *A and M Karagheusian, Inc.*, 44 N.J. 52. The attempt to predicate liability on the law of sales or contract is being abandoned in an increasing number of jurisdictions. In *Piercefield* v. *Remington Arms Co.*, supra, the court thrust aside all fictions as to the basis of the manufacturer's liability, and liability was imposed on the basis of a tort committed by the defendant. Issues should not be determined by labels, which serve only to confuse. See *Caporale* v. *C. W. Blakeslee & Sons, Inc.*, 149 Conn. 79, 86.

A defective automobile manufactured as alleged in this complaint by the defendant General Motors constitutes a real hazard upon the highway. See *Greeley* v. *Cunningham*, 116 Conn. 515, 518. The likelihood of injury from its use exists not merely for the passengers therein but for the pedestrian upon the highway. The public policy which protects the user and consumer should also protect the innocent bystander. In the instant case, an innocent bystander, while playing golf, was killed by a car defectively manufactured, insofar as the allegations of the complaint go, by the defendant automobile corporation. There seems to be no sound public policy to bar a trial upon the issues raised in the complaint. Accordingly, the demurrer of the General Motors Corporation to the third count of the complaint is overruled.