Robert E. **KLIMAS**

v.

**INTERNATIONAL TELEPHONE AND
TELEGRAPH CORPORATION.**

Civ. A. No. 3987.

United States District Court
D. Rhode Island.

March 25, 1969.

Leonard Decof, Providence, R. I., for plaintiff.

William C. Dorgan of Higgins & Slattery, Providence, R. I., for defendant.

## OPINION

PETTINE, District Judge.

This is a products liability, personal injury litigation, in which the plaintiff, a citizen of West Virginia, seeks damages in excess of $10,000 from the defendant, a Delaware corporation with its principal place of business in Rhode Island.[1] Defendant has moved, pursuant to Fed.R.Civ.P. 12(b) (6), to dismiss count III, which alleges a strict tort cause of action, and count IV, which alleges express and implied warranty causes of action.

The facts, for purposes of this motion, are as follows.[2] In August, 1966 the plaintiff, a professional electrician, was in the process of testing, with a standard fuse-tester, certain fuses, not purchased by him from the defendant but manufactured by the defendant, when one such fuse, a "Royal Crystal" fuse, exploded, causing a fragment of glass to strike him in the right eye. As a result, plaintiff has suffered near total blindness in that eye and certain other injury to his person. Count III states (1) that the Royal Crystal fuse, when placed on the market, contained a defect which created an unusual risk of harm to those likely to use it; (2) that the Royal Crystal fuse had remained substantially unchanged since the time it left the factory of the defendant to the date it exploded in plaintiff's face; (3) that plaintiff had no knowledge of nor any reason to suspect the existence of, the defect; and (4) that the defect caused the explosion which in turn resulted in plaintiff's injuries. Count IV states (1) that the defendant had expressly and impliedly warranted that the Royal Crystal fuse was fit for the ordinary purposes of electrical fuses, was merchantable, and was safe for testing in the ordinary manner; (2) that plaintiff relied upon those express and implied warranties; (3) that defendant breached those express and implied warranties; (4) that plaintiff, in consequence of defendant's breach of those expressed and implied warranties, suffered injuries to his person; and (5) that within a reasonable time plaintiff gave notice to the defendant of the breach of those express and implied warranties.

### The Governing Law

A federal district court whose jurisdiction is predicated upon diversity of citizenship must apply the substantive law of the state in which it sits. Erie R. R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Moreover, if there is a conflict between

1. 28 U.S.C. § 1332(a) (1).

2. In accordance with established principle, all inferences are drawn and all ambigui-

ties are resolved in favor of the non-movant, here the plaintiff.

the substantive law of the forum state and the substantive law of some non-forum state, which state has some reasonable relationship to the legally operative facts of the case, then the federal court must resolve the conflict by reference to the conflict of law rules of the forum state. Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1474 (1941). However, if the parties to a diversity litigation in a federal court fail to raise a possible conflict of substantive law rules, then, under *Erie*, the federal court must look to state law to see what legal effect ensues. Although the Rhode Island Supreme Court has never decided the question, the better rule is that the substantive law of the forum is presumed to control. Leary v. Gledhill, 8 N.J. 260, 84 A.2d 725 (1951). See Article IV, § 4.01 of the Uniform Interstate and International Procedure Act, 1962 Handbook, National Conference of Commissioners on Uniform State Laws 220. See § 599(e) Restatement, Conflict of Laws, 2nd, Comments (f), (g), and (h). (Tent. Draft No. 11, 1965). In the instant case, the parties have chosen not to pursue the possible conflict between the substantive products liability rules of West Virginia, where the injury occurred, and those of Rhode Island, where the product was manufactured. In these circumstances, the Rhode Island courts would most likely follow the better rule and presume that Rhode Island substantive law controls. The court, therefore, does not reach the problem of gauging how the Rhode Island Supreme Court would approach the development of conflict of law rules in the products liability area. See Woodward v. Stewart, R.I., 243 A.2d 917 (1968). See generally Weintraub, Choice of Law for Products Liability, 44 Texas L.Rev. 1429 (1966); Note: Products Liability and the Choice of Law, 78 Harv.L.Rev. 1453 (1965). In sum, Rhode Island law governs the substantive questions to be decided in this case.

## The Merits

■ In Henry v. Eshelman & Sons, 99 R.I. 518, 209 A.2d 46 (1965), the Rhode Island Supreme Court held that poultry farmers, whose chickens had become sterile as a result of their having eaten corrupt chicken feed, could not recover directly against the chicken feed manufacturer for breach of either common law or statutory warranties, because the parties were not in privity of contract. With respect to the common law implied warranty theory, the Supreme Court reasoned that the plaintiff's claim sounded only in contract, and that, because privity was such a long established doctrine in actions on the contract, only the legislature could eradicate that doctrine. Justice Joslin wrote a concurring opinion in which Chief Justice, then Justice, Roberts joined. They traced the history of products liability law in Rhode Island, disputed the majority's contention concerning the respective lawmaking roles of the courts and the legislature, differed with the majority's supposition that common law implied warranty is exclusively contractual in origin and nature, and noted their preference for a compensatory, risk distribution approach to the law of products liability. However, for inarticulated reasons,[3] they refrained from "a departure from * * * (the) requirement of privity on the facts of this case." 99 R.I. at 528, 209 A.2d at 51. With respect to the statutory implied warranty, the entire court apparently joined in the holding that " * * * §§ 6A–2–315 and 6A–2–318 (of the Rhode Island General Laws, as amended, 1956) are not applicable to the case at bar. Those sections presuppose that the buyer is in privity with the seller and extends such privity 'to any natural person who is in the family or household of his buyer or who is a

---

3. The strength of the concurrers' assertions suggests that it was their purpose to raise a "red flag" to the Rhode Island industrial and insurance communities that strict liability would certainly become law in the near future.

guest in his home * * *'" 99 R.I. at 525, 209 A.2d at 50.

The Supreme Court's holding in *Henry* with respect to the statutory implied warranty is manifestly correct and in total accord with the case law elaboration of the identical statutory sections in other jurisdictions. See the cases cited and discussed in Willier & Hart, Uniform Commercial Code Reporter-Digest at § 2–318 (1966). In the instant case, the plaintiff's count IV alleges causes of action pursuant to the statutory express and implied warranty sections, 6A–2–313, 6A–2–314, and 6A–2–315, of the Rhode Island General Laws. However, as in the *Henry* case, the plaintiff here is, by the express terms of the statutory scheme, 6A–2–318, beyond the scope of statutory warranty protection. Accordingly, count IV of the plaintiff's complaint must be dismissed.

■ The correctness of the majority opinion in *Henry,* in so far as it deals with common law implied warranty, is, however, highly questionable and has been rather severely criticized. See, e. g., Kassab v. Central Soya Corp., 432 Pa. 217, 246 A.2d 848 (1968), Donovan, Recent Developments in Products Liability Litigation in New England: The Emerging Confrontation Between The Expanding Law of Torts and the Uniform Commercial Code, 19 Maine L.Rev. 181 at 192 and n. 56 (1967). Prosser, The Fall of the Citadel (Strict Liability to the Consumer,) 50 Minn.L.Rev. 791 at 798 (1961), Willier & Hart, Uniform Commercial Code Reporter Digest at § 2–318 (1966). It is readily conceivable that if the Rhode Island Supreme Court were presently given the opportunity, it would reverse *Henry's* common law warranty holding, for the Supreme Court has shown of late its willingness to subject to the closest scrutiny, and if necessary, to abolish long-established but unjust and outmoded rules of law. See, e. g., Woodward v. Stewart, R.I., 243 A.2d 917 (1968), Rampone v. Wanskuck Buildings, Inc., R.I., 227 A.2d 586 (1967), Richard v. H. P. Hood & Sons, Inc. R.I., 243 A.2d 910 (1968), Wilkinson

v. Harrington, R.I., 242 A.2d 745 (1968). Certainly, the law in other neighboring jurisdictions encourages such a reversal. E. g., Hamon v. Digliani, 148 Conn. 710, 174 A.2d 294 (1961), Connolly v. Hagi, 24 Conn.Supp. 198, 188 A.2d 884 (1963), Deveny v. Rheem Mfg. Co., 319 F.2d 124 (2d Cir. 1963) (Vermont law), O'Brien v. Comstock Foods, Inc., 125 Vt. 158, 212 A.2d 69 (1965). And most importantly, considerations of public policy concerning the compensation of personal injury victims and the distribution of risks virtually mandate such a reversal. See Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358, 161 A.2d 69, 75 A.L.R.2d 1 (1960), Greenman v. Yuba Power Products, Inc., 59 Cal.2d 57, 27 Cal.Rptr. 697, 377 P.2d 897, 13 A.L.R.3d 1049 (1963), Henry v. Eshelman & Sons, 99 R.I. 518, 209 A.2d 46 (1965) (Concurring opinion, Joslin, J.). Cf. Rampone v. Wanskuck Buildings, Inc., R.I., 227 A.2d 586 (1967), Rusch Factors, Inc. v. Levin, 284 F.Supp. 85 (D.R.I.1968). But this court need not go so far, for the majority opinion in *Henry* makes it possible for this court to accomplish by one means what it may be foreclosed from accomplishing by another. When *Henry* was decided, Rhode Island still employed the forms of action as a matter of procedural law, and the majority there stated that its holding might well have been different had the plaintiffs not framed their complaint exclusively in assumpsit. However, the forms of action no longer exist in Rhode Island procedure, and count III of the plaintiff's complaint in the instant case unquestionably sets out a theory of tortious invasion of the plaintiff's person. Accordingly, this court is free, within the boundaries of Erie R. R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), to create and elaborate a common law rule of products liability in tort.

To be bound by *Erie* in circumstances where state law is undeveloped is to be free enough, for the ascertainment of state law in such circumstances is not a mechanistic process by which the

"brooding omnipresence of the law" is discovered, but is rather a creative process in which reference may be had to the developing case law of other jurisdictions, the elaborated statutory law of both the federal and state sovereignties, the suggested reform rules or the carefully studied restatements of the various organized legal institutions, the treatises and articles of legal scholars, the studies of social scientists, the practical wisdom of the marketplace, the pure wisdom of the philosophers, and the prevailing mood and jurisprudential approach of the state's highest tribunal. See Corbin, The Laws of the Several States, 50 Yale L.J. 762 at 775–76 (1941).

Even the most cursory examination of these various sources reveals an inexorable momentum in twentieth-century law and socio-economic policy toward consumer-protective legal devices. The growth of agencies, state and federal, whose purpose and function is the regulation of consumer affairs is one manifestation of the trend; the proliferation of statutory schemes designed to protect the unknowing buyer is another; and the increasing militance of institutions of learning, the great foundations, and private consumers-rights groups is yet another.

The courts, too, have responded. It would be mere repetition to present here what other legal scholars have so well documented and narrated concerning the growth of strict liability and the demise of privity in the courts of the various states since the turn of the century. See, e. g., Prosser, The Assault Upon the Citadel (Strict Liability to the Consumer), 69 Yale L.J. 1099 (1960), Prosser, The Fall of the Citadel (Strict Liability to the Consumer), 50 Minn.L.Rev. 791 (1966), Jaeger, Privity of Warranty: Has The Tocsin Sounded, Duquesne U.L. Rev. I (1963), Donovan, Recent Developments in Products Liability Litigation in New England: The Emerging Confrontation Between the Expanding Law of Torts and the Uniform Commercial Code, 19 Maine L.Rev. 181 (1967). It suffices here to point to the main themes underlying the courts' decisions. In Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358, 161 A.2d 69 (1960), the New Jersey Supreme Court looked principally to the manufacturing, distribution, and advertising practices of the automobile industry, to principles of risk distribution,[4] and to general rules concerning the scope of legal responsibility, in order to compensate, by way of common-law warranty theory, a non-purchaser, personal injury victim, whose use of the defective, injury-producing vehicle was clearly foreseeable. In the words of one authority, "(t)he decision must be analyzed as permitting recovery irrespective of privity or fault." Donovan, supra at p. 189. In Greenman v. Yuba Power Products, Inc., 59 Cal.2d 57, 27 Cal.Rptr. 697, 377 P.2d 897, 13 A.L.R. 3d 1049 (1963) the California Supreme Court abandoned the language of common law warranty and adopted the language of strict tort liability in protecting a non-purchaser user who was injured personally as a result of a defect in a combination saw, drill and wood lathe. The court based its holding on the theory of risk distribution and general rules concerning the scope of legal responsibility. Its language that a "manufacturer is strictly liable in tort when an article he places on the market, knowing that it is to be used without inspection for defects, proves to have a defect that causes injury to human

4. Much of the development of strict liability in the products area has been based on the economic theory of "enterprise liability." According to this theory, the risk of loss from defective products is placed upon the manufacturer rather than upon the individual consumer or user, since the manufacturer can insure against the risk and pass the cost of insurance off to his buyers, thus spreading the risk of loss over the entire group of buyers. See, e. g., Henningsen v. Bloomfield Motors, Inc., 32 N.J. at 379–380, 161 A.2d at 80–81, Seely v. White Motor Co., 63 Cal. 2d 9, 45 Cal.Rptr. 17, 403 P.2d 145 (1965), Escola v. Coca Cola Bottling Co., 24 Cal.2d 453, 150 P.2d 436 (1944) (Concurring opinion, Traynor, J.).

beings" provided the initial material from which § 402A of the Restatement, Second, of Torts was fashioned. Two neighboring jurisdictions have adopted the *Henningsen-Greenman*—§ 402A rationale. Rossignol v. Danbury School of Aeronautics, Inc., 154 Conn. 549, 227 A.2d 418 (1967), Hamon v. Digliani, 148 Conn. 710, 174 A.2d 294 (1961), Connolly v. Hagi, 24 Conn.Sup. 198, 188 A.2d 884 (1963), Miller v. Preitz, 422 Pa. 383, 221 A.2d 320 (1966). It is this court's considered opinion that the consumer protection, risk distribution rationale is the wisest rationale for cases of this sort. Such a rationale places the risk of harm on the entity most capable of controlling that risk and best positioned to spread and minimize it. Moreover, such a rationale is wholly compatible with the general rule governing the scope of legal responsibility that "(t)he risk reasonably to be perceived defines the duty to be obeyed." Palsgraf v. Long Island R. R., 248 N.Y. 339 at 344, 162 N.E. 99 at 100, 59 A.L.R. 1253 (1928). Cf. Rusch Factors, Inc. v. Levin, 284 F.Supp. 85 (D.R.I.1968).

■ It remains to state a rule of law commensurate with that rationale, to examine the limits of the rule, and to apply the rule to the facts of this case. The court states the rule as follows:

> One who sells any product in such a condition of defectiveness as to render the product dangerous to person or property is subject to liability for harm thereby caused to any reasonably foreseeable person or to his property, if the seller is engaged in the business of selling such a product, and if the product reaches the person without substantial change in the condition in which it is sold. This rule is applicable, even though the seller has exercised all possible care in the preparation and sale of the product and even though the person has not

purchased the product from or entered into any contractual relation with the seller.

The court notes the following limitations placed on this rule and takes no position with respect to the future development of this judicially created rule. First, the rule eliminates the consumer-user limitation of § 402A but awaits development with respect to the extent of liability to non-user, non-consumer injured persons. See, e. g., Mitchell v. Miller, 26 Conn.Sup. 142, 214 A.2d 694 (1965). Second, the rule by its terms covers immediate parties to a sales transaction, but the court takes no position with respect to the relationship between the rule and the statutory warranty sections in those cases in which persons within the statutory sections are also within the rule.[5] Compare Shanker, Strict Tort Theory of Products Liability and the Uniform Commercial Code: A Commentary on Jurisprudential Eclipses, Pigeonholes and Communication Barriers, 17 W.Res.L.Rev. 5 (1965) with Littlefield, Some Thoughts on Products Liability Law: A Reply to Professor Shanker, 18 W.Res.L.Rev. 10 (1966). See Donovan, supra at pp. 251–260. The court is constrained to recognize the vitality of the *Henry* case, so far as common law implied warranties are concerned, but takes no position with respect to this rule's relationship to common law implied warranty should *Henry* be reversed. Kassab v. Central Soya Corp., 432 Pa. 217, 246 A.2d 848 (1968). The court takes no position with respect to the problem of so-called "economic loss" under this rule. Seely v. White Motor Co., 63 Cal.2d 9, 45 Cal.Rptr. 17, 403 P.2d 145 (1965), Santor v. A & M Karagheusian, Inc., 44 N.J. 52, 207 A.2d 305, 16 A.L.R.3d 670 (1965). See Note, 7 B.C. Ind. & Comm. L.Rev. 767 (1966). Finally, the court takes no position with respect to defenses to actions pursuant

---

5. In the light of recent action by the Rhode Island House, see Providence Evening Bulletin Wednesday, March 12, 1969 at p. 38, col. 1, extending the warranty provisions of the Code to the limits of foreseeability, it is possible that the problems involved in reconciling Code law with tort law will surface in the courts very soon. See especially Donovan, *supra* at pp. 258–60.

to this rule or with respect to requirements of proof under this rule. See Donovan, supra at pp. 238–251.

The rule is not difficult of application under the facts of this case. Count III of the plaintiff's complaint alleges all of the essential elements required by the rule. There is no merit to the contention that plaintiff was not a reasonably foreseeable victim of the defective Royal Crystal fuse. See Connally v. Hagi, 24 Conn.Sup. 198, 188 A.2d 884 (1963).

For the reasons stated, the defendant's motion to dismiss is granted as to Count IV and denied as to Count III. Plaintiff will prepare an order accordingly.