The plaintiff has commenced this product liability action against Ace Hardware Store and against the moving party, the defendant Lyn-Lad Truck Racks, Inc. d/b/a Lynn Ladder and Scaffolding Co., Inc. This is an action for personal injuries allegedly sustained by the plaintiff while using what he claims to be a defective ladder. CT Page 12068
The ladder was manufactured by A.W. Flint Co., INC., formerly of New Haven, Connecticut. On January 19, 1990 the defendant Lyn-Lad Truck Racks, Inc. purchased the physical assets of A.W. Flint Co., Inc., to wit "all inventory, whether finished goods, work in progress or raw materials; all machinery and equipment used in connection with seller's manufacture of ladders; the motor vehicles; all rights under the seller's outstanding purchase orders, contracts, agreements, and personal property leases; and U.S. Patent #4,844,200 for end cap for extension planks."
Excluded from the assets were any of the seller's cash, any accounts receivable, the trade or corporate name A.W. Flint Company, Incorporated, any general ledgers or books of account, and all other assets of the seller not expressly included herein.
The contract provides, in essence, that the buyer, here the defendant, does not assume any of the liabilities of the seller for injuries of the nature alleged to have been herein sustained.
The plaintiff claims that on February 19, 1995 he was injured when a 20-foot Spartan Type III extension ladder manufactured, produced and distributed by the A.W. Flint Co. collapsed, throwing him to the floor from a height of approximately (20) feet.
The plaintiff claims in its complaint against the defendant Lynn-Lad Truck Racks, Inc. that the defendant purchased and acquired substantially all of Flint's assets; Lynn Ladder thereafter held itself out to the public as a continuation of Flint, continued business operations of Flint at the same location, and continued to produce similar products under similar names.
 I. ISSUES
The defendant moves for summary judgment. Its position is that it did not sell the product nor did it manufacturer the product. There appears to be no controversy as to manufacture and sale, as the complaint clearly reveals that the manufacturer and original seller was A.W. Flint Company.
The defendant claims that it does not have "successor liability" as Connecticut has not judicially or by statute adopted the theory of successor liability proffered by the CT Page 12069 plaintiff. Further, it claims that even if such a theory had been adopted, the facts of this case would not warrant the application of that theory.
 II. Successor Liability Theories
In dealing with the concept of successor liability the United States District Court for the District of Connecticut acknowledges the general rule that "a corporation which purchases all of the assets of another does not become liable for the debts and liabilities of its predecessor unless (1) the purchase agreement expressly or implicitly so provides; (2) there was a merger or consolidation of the two firms; (3) the purchaser is a "mere continuation of the seller; or (4) the transaction is entered into fraudulently for the purpose of escaping liability."Ricciardello v. W. Gant Company et al., 717 F. Sup. 56, 58
(1989) (although the case does not cite Connecticut precedent, the court appears to determine that Connecticut would follow the "general rule"-p. 58). It does not appear, from the documents submitted, that this transaction falls within this "general rule."
There is, however, a recognized exception to the "general rule" referred to as the "product line continuation" exception to successor liability. This exception is articulated in Ramirez v.Amsted Industries, Inc., 86 N.J. 332, 431 A.2d 811 (1981), adopting in principle the criteria of Ray v. Alad Corp.,19 Cal.3d 22 (1977).
The product line continuation has been applied when "(1) the transferee has acquired substantially all of the transferor's assets, leaving no more than a coporate shell; (2) the transferee is holding itself out to the general public as a continuation of the transferor by producing the same product line under a similar name; (3) the transferee is benefiting from the goodwill of the transferor." See Rarmirez v. Amsted Industries, supra. See also memoranda of decision of Superior Court, case #CV 92-1339263 Judicial District New Haven, Sullivan v. A.W. Flint Company andLyn Ladder v. Scaffolding Company, Inc., August 5, 1996, Corrandino, J., 17 CONN. L. RPTR. 331
Although no Connecticut appeals court has specifically dealt with the "product line continuation" avenue of liability, this court is of the opinion that there is a sound legal basis for the application of the product line continuation theory of liability in this State. CT Page 12070
 III. Factual Application
Applying the factors of the "product line continuation" theory to the evidence submitted by the defendant in this motion it is obvious that significant questions of fact do exist as to the application of this cause of action. The sales agreement makes it clear that all items of tangible property (inventory, finished goods, work in progress, raw materials, machinery, motor vehicles, personal property leases, and the like) are to be transferred to the defendant. What appears to be left are cash, accounts receivable, ledgers and the like, which are mostly intangibles which can easily be distributed to the stockholders. Hence the question is whether what is left is merely a corporate shell. The affidavit of the defendant does not resolve that question.
It is not clear as to whether the defendant continued to produce the same product line as did the Flint company. The court notes that in the sales agreement the seller turned over "U.S. Patent 4,844,200" which raises a question of whether this patent allowed the defendant to produce ladders of unique or distinctive characteristics which the consuming public would associate with the seller corporation. This raises similar questions of whether, by product identification or otherwise the defendant benefitted [benefited] from the goodwill of the seller, A.W. Flint Co., Inc.
 IV. Conclusion
Although the doctrine of successor liability may in given circumstances appear harsh, yet it is a continuation of the basic principle that between an injured consumer and a business entity the latter is best able to absorb and to pass off to, the body of customers, the general public, through pricing, the cost of personal injury sustained by ordinary citizens. The concept is almost a century old, commencing with the enactment of the Workers' Compensation Law in the second decade of this century. The concept of strict accountability, even absent carelessness, negligence, recklessness or intent, has been repeatedly redefined in this State throughout the last forty years. See Hamon v.Digliani, 148 Conn. 710, 718 (1961), eliminating necessity of privity of contract in product cases; Rossignol v. Danbury Schoolof Aeronautics, Inc., 154 Conn. 549, 559 (1967), adopting the concept of strict liability in product cases; Handler v.Remington Arms Co., 144 Conn. 316, 321 (1957), adopting a continuing duty to warn. These concepts have been codified in CT Page 12071 General Statutes 52-572n et seq.
Although a long statute of limitations in product liability cases (General Statutes 52-577a) may make it appear difficult for buyers and sellers to accomplish closure in cases of this nature yet the buyer is not without protection. He can himself purchase insurance against the loss, or require that the seller purchase a policy insuring the buyer, or withhold sums for the purchase price in escrow, and, in the last analysis, he might be able to seek indemnity again the seller in the event that he did not take the above prudent steps. See Malerba v. Cessna Aircraft Co.,210 Conn. 189, 198 (1989). Generally the injured party has no defense to the risk of non-compensation from a voluntarily defunct seller.
For the reasons set forth herein, the motion for summary judgment is denied.
SULLIVAN, L., J.