HEZEKIAH HUNTINGTON *against* ELIJAH RUMNILL.

WRIT of error.

An attorney may be liable for a debt lost by his negligence, but he is not *of course* liable for the loss of *the evidence* of that debt. And in a suit brought against him for *such loss,* he may show, that the plaintiff had another remedy for the recovery of his debt, which he has successfully pursued.

*Elijah Rumnill* brought an action of account to the county court, in *August,* 1807, against *Hezekiah Huntington,* declaring that the defendant, being a practising attorney, in *February,* 1799, received of the plaintiff two notes to collect and account for; one against one *Leister,* payable to *George Merrills,* and endorsed by *George Todd;* the other, dated 30th *March,* 1787, for 8*l.* 10*s.* with interest, made payable by *Joseph Pease* to *David Todd,* and on the 23d *January,* 1799, endorsed by *David Todd* to the plaintiff; and that the defendant had neglected to account.

The record of such recovery will be proper evidence of this fact, although the attorney was no party to it.

The defendant admitting himself bailiff, and receiver, auditors were appointed, who awarded against the defendant for the *Pease* note. Upon a remonstrance, the court refused to accept their award; and appointed other auditors, who also awarded for the plaintiff, for the amount of the *Pease* note, and interest. This award was also set aside by the court, and new auditors appointed, who awarded for the defendant. *Rumnill* then brought a writ of error to the superior court, on the ground that the county court ought to have accepted the two former awards. The superior court reversed the decision of the county court, because they refused to accept the award of *July,* 1808, which was the second award. And to reverse that decision of the superior court this writ of error is brought.

From the facts proved before the court, upon a remonstrance to that report, it appeared, that *the auditors found that Rumnill* received this note of *George Todd* in part pay-

4

ment of a horse which he sold *George Todd:* that *Huntington,* in *March,* 1799, commenced a suit against the executors of *Pease :* that *David Todd,* the nominal plaintiff, interfered; compelled *Huntington,* by an order of court, to disappear; and submitted the suit to arbitrators: that *Huntington,* in *March,* 1800, at the request of *George Todd,* attorney to *David Todd,* without the direction of *Rumnill,* but relying upon the assurances of *George Todd* that he would settle with *Rumnill,* delivered *George Todd* the *Pease* note to exhibit before the arbitrators: that *Huntington,* however, first took a copy of the note and endorsement; and in *May,* 1800, at the request of *Rumnill,* commenced a suit against *David Todd* upon his endorsement, which suit failed for want of the original note.

It also appeared before the court, that the defendant before the auditors *offered* to prove, that in 1801, at the request of *Rumnill,* he commenced a suit in favour of *Rumnill* against *George Todd* on the original contract of sale of the horse, on the ground that the *Pease* note was of no value, and recovered judgment before the superior court for 72 dollars and 42 cents damages, and 94 dollars and 14 cents costs, the court making the *Pease* note and interest the rule of damages : that *Rumnill* applied for, and received, this execution of *Huntington* against *George Todd;* and that *Todd* is able to pay it. A copy of the process and judgment and execution against *George Todd* was offered in evidence, and parol evidence of the other facts. The auditors refused to admit the evidence in support of these facts.

*N. Terry* and *Huntington,* for the plaintiff in error, contended, that the facts found by the auditors would not admit of a report against the defendant; and that they ought to have heard the proof offered.

June, 1809.      1. From the facts found, the award should have been
HUNTING-  in favour of the defendant.
TON
v.
RUMNILL.      It is agreed, *Huntington* was not liable for the *Merrills*
note.   The *Pease* note he put in suit immediately; and
*Todd*, the plaintiff, interfered, and prevented the prose-
cution of the suit.   When *Huntington* had done this, he
had fulfilled the duty required by the bailment, and was
no further liable.

But it is said, he delivered the note to *George Todd*,
and is therefore liable.   But a bailee is not to be made
responsible unless he is guilty of misconduct, to the
injury of the bailor. *Co. Litt.* 172.  *Huntington*, by giving
the note to a lawyer at the bar, cannot be considered as
acting corruptly, or guilty of gross negligence.  Besides,
*Rumnill* received no injury by it, for his claim against
*David Todd*, under the circumstances of this case, could
not be defeated for want of the original endorsement.

But if *Huntington* were liable at all for delivering up
this note, he could be liable only in a special action, in
which the plaintiff must aver, as the ground of his
claim, the loss of the evidence of his debt, and that he
has sustained damage thereby.

2. But the evidence was relevant, and ought to have
been admitted.   The evidence offered went to show that
*Rumnill*, having an election to pursue the endorsor on
his endorsement, or to treat the note, &c. as of no value,
had elected the latter mode, and pursued it with suc-
cess; and, consequently, had deprived himself of any
other remedy.   Indeed, the superior court, in the suit
of *Rumnill* against *George Todd*, went upon the ground,
that the sale of the horse by *Rumnill* to *Todd*, and the
sale of the note by *Todd* to *Rumnill*, formed one trans-
action; and that *Rumnill* put the note in the hands of

*Huntington*, to procure payment for his horse; it was relevant, therefore, to show, that this object had been attained in another manner. And the moment judgment was rendered against *George Todd*, and the execution was satisfied, *Rumnill* would have been under an obligation to deliver over this note (if in his hands) to *George Todd*. And consequently, if *Rumnill* had the note in his hands, he could not now maintain an action against *David Todd* upon his endorsement. Nor do these facts militate against any facts stated in the declaration. That *George Todd* delivered to the plaintiff, in payment for a horse, a note endorsed by *David Todd*, surely does not negate the fact, that this note was endorsed by *David Todd* to the plaintiff.

But it is said, these facts ought to have been pleaded. Three things only can be pleaded to an action of account; never bailiff and receiver; fully accounted; and a release. *Godfrey* v. *Saunders*, 3 *Wils*. 113. These facts could not then have been pleaded to the action. And we have no practice of pleading before auditors, as they have in *England*. Whatever is pleaded there before auditors, is given in evidence here. Our defence simply was, that the defendant had done his duty, and that *Rumnill*, his employer, approved of his proceedings. And yet this man, having, by the aid of the defendant, recovered of *George Todd*, the value of his horse, and the interest, would now recover of *Huntington* the amount of the note given for the horse, when the very ground of his recovery against *George Todd* was, that this note was of no value.

Again: The auditors ought to have admitted in evidence the record. The objection that it was between *other parties* is unfounded. A record is not *conclusive* evidence of the *facts found* in it, and cannot be pleaded in bar, except as against the same parties. But the

*existence* of a judgment may be shown against those who were no parties to it, as in suits brought by sheriffs, &c. Here, the object was, not to establish the verity of the facts upon which the judgment was founded, but to show the existence of the judgment in support of a collateral fact. The auditors should have heard the evidence offered, *in mitigation of damages*, if for no other purpose; for surely, it was some mitigation of the defendant's offence in losing a note of 28 dollars, that he had recovered a judgment to the amount of 166 dollars, by the direction, and for the benefit of the plaintiff.

*Bradley*, for the defendant in error.

1. The defendant *Huntington*, having received this note for collection, was bound to procure the money from the maker or endorsor, and pay it over to the plaintiff, or to show that it could not be collected, and that without any fault of his. The defence is, not that it could not have been collected, but that it cannot now be collected, because, indeed, the defendant himself has given up the evidence of debt confided to him, to the man of whom it was to have been collected, (or his son.) He is thus defending his *neglect* of duty, by showing an absolute misfeasance. He would justify himself for not collecting the money, by showing, that he himself put it out of his power. He would throw a loss upon us, by alleging a breach of duty in himself.

It is said, we cannot recover for this breach of duty in this action. But having shown the defendant's liability to account, it becomes his duty to account in a proper manner. From the facts, therefore, *found* by the auditors, there can be no doubt of the liability of the defendant for this note.

2. But it is contended, that the evidence was improperly rejected by the auditors.

This evidence could form no defence for *Huntington;* and consequently was irrelevant. It formed no justification; because if *Rumnill* had the note, he might yet recover of *David Todd* upon his endorsement. A recovery for this horse against *George Todd* could be no bar to a suit brought against *David Todd* upon his endorsement. And *George Todd* could maintain no suit against *Rumnill* for this note, or the money collected upon it; because he has parted with his interest in it, and the judgment in favour of *Rumnill* against him cannot revest the interest in him, especially as that judgment has never been satisfied. But if *George Todd*, in consequence of this judgment, could recover the note, or the money collected upon it, of *Rumnill*, then, it was more important that *Rumnill* should have the note in his hands to answer this demand.

But the *defendant* cannot, upon any principle, refuse to perform his contract with the plaintiff, because it would be of no service to the plaintiff; and if *Rumnill* would be estopped from withholding this note from *George Todd*, *Huntington*, a mere stranger, cannot undertake to assert the rights or claims of *George Todd*. If the evidence would have barred the plaintiff's right of action, as is contended, it should have been pleaded in bar to the action before the court, and could not, at that late stage of the cause, be taken advantage of. 1 *Com. Dig.* 119, 120. 1 *Bac. Abr.* 37—39. 1 *Vin. Abr.* 157, 158. 163, 164.

Besides, this evidence could not be received, because it contradicts facts stated in the declaration: It goes to show, that the note was not in fact warranted to the plaintiff by *David Todd*, but by *George Todd*. Nor could the evidence be admitted to lessen the damages; for if *Huntington* had done his duty in the suit against *George Todd*, it could have no effect upon the damages

June, 1809.    for not performing his duty with respect to the note en-
——            dorsed by *David Todd.*
HUNTING-
TON
v.
RUMNILL.        Another objection applies to the copy of the judg-
ment which was offered in evidence: It was not between
the same parties.   Had the judgment been against *Rum-*
*nill* in that suit, he could never have used it as evi-
dence against *Huntington;* it cannot therefore be evi-
dence for *Huntington. Peake's Ev.* 38.   But it would
be manifestly unjust, that this recovery against *George*
*Todd,* which it is not pretended is equivalent to a re-
covery on the endorsement, should prevent a suit on
the endorsement.   Had the money been paid upon this
judgment, a question might arise as to its effects; but
that this *judgment* should bar an action, when in conse-
quence of it the party is no nearer a satisfaction of his
claim than before it was obtained, is extraordinary in-
deed.   If *Rumnill* cannot recover of *Huntington* for this
note, *George Todd* cannot; and thus *Huntington* makes
himself, by his own act, the owner of the note, and has
the right to dispose of it at his pleasure.

BY THE COURT.

An attorney, who receives a note, or other evidence
of debt, for collection, is undoubtedly liable for the debt,
if it be lost by his negligence.   But the loss of the
note, or other ordinary evidence of the debt, does not
necessarily involve the loss of the debt itself.   And in
order to charge the attorney with the debt, the inquiry
must be, not whether the ordinary evidence of the debt
is lost by his negligence, but whether the debt itself is
lost.

In this case, it appears, that the debt due to *Rumnill,*
and put into the hands of *Huntington* for collection, was
not only secured by the endorsement of *David Todd,*

but also, by the liability of *George Todd*, to pay the price of the article which had been sold to *Rumnill*, and for which the note had been assigned. Any evidence, therefore, which went to show, that the debt had been paid by *George Todd*, or remained secured by him, went to show, that the debt was not lost, and was pertinent to the issue before the auditors The judgment and execution obtained by *Rumnill* against *George Todd* was evidence of this description, and ought to have been admitted by the auditors. We are, therefore, of opinion, that the decision of the county court in rejecting the award of *July*, 1808, for the reasons stated in the remonstrance, was correct, and ought not to have been set aside by the superior court.

Judgment reversed.