### John Wilson *versus* John Russ.

Payment of a debt by the judgment debtor to an officer having an execution against him in force, discharges the debtor; but proof of such payment to the officer does not raise a liability on the part of the attorney to pay the debt to the creditor. The officer must have paid the money to the attorney before such liability is raised against him.

If an attorney, holding a note in his own favor against a client, puts it in suit, and it be shown that the attorney received a sum of money for the client, it cannot be allowed to the defendant in set-off, unless a set-off has been filed, or unless it be proved, that the money was received in payment of the note.

An attorney is bound to execute business in his profession entrusted to his care with a reasonable degree of care, skill and despatch. If the client be injured by the gross fault, negligence, or ignorance of the attorney, the attorney is liable. But if he act with good faith, to the best of his skill, and with an ordinary degree of attention, he is not responsible for the loss of demands left with him for collection.

THE facts in this case are stated in the opinion of the Court. After the evidence had all been exhibited to the jury, the counsel for the defendant requested the Judge to instruct the jury: —

1. That if any of the debts named in the schedule had, in the opinion of the jury, been collected by either member of the firm prior to the bringing of the action, whether contained in the account filed in offset, or not, it would be their duty to apply the amount, as far as received, to the payment of the note, unless the plaintiff should show, that the money had been withdrawn by the defendant, or a different disposition had been made of it, by his books or docket, or otherwise.

2. If these debts had been converted into executions and delivered by said firm to officers for collection who had collected them, the jury were authorized to believe that the money was in fact paid over to them and to no one else, in the

Wilson v. Russ.

absence of evidence to the contrary, and that the non-pro-
duction of the books and docket of the firm was a circum-
stance in favor of that supposition.

These requests were not complied with, and the instructions
were given which are found stated in the opinion of the Court.

*J. Williamson* argued for the defendant, contending that
the instructions requested should have been given, and that
those given were erroneous; and cited *Dearborn* v. *Dearborn*,
15 Mass. R. 316.

*Wilson, pro se.*

The opinion of the Court was by

EMERY J. — The suit in this case was upon a note, dated
Feb. 22d, 1822, to the late firm of Wilson & Porter, for $120,
payable in six months from date with interest.   An account in
offset was filed on account of moneys collected of sundry in-
dividuals, and the defendant produced a schedule of demands
dated March 1st, 1822, signed by the name of said firm in
favor of the defendant for collection.

It did not appear that any demand had ever been made on
either of said partners to account for these debts.

The case comes before us on exceptions to the instructions
of the Judge before whom the trial was had in this Court,
when the jury returned a verdict for the whole amount of the
note for plaintiff.   The defendant attempted to prove by the
testimony of one Webb and one Hurd that payments had been
made by these witnesses to Porter of certain sums.   Webb
stated the payment by him to be exactly $20 debt in favor of
Russ and no cost.   The effect of this proof was attempted to
be repelled by the production of the execution which was un-
paid, and left to the jury.

Hurd testified to the payment of his debt in favor of de-
fendant to Porter of from $30 to $50 in lumber, and Porter
told Hurd to call and settle *with him* but *he did not.*

These two demands were not contained in the account in
offset, but were embraced in the schedule.

It was sworn by Benjamin Lilly, that 15 or 20 years ago he paid an execution of the defendant of $40 with costs and fees to one Freeman, a deputy sheriff—and he thought the execution issued from the office of Wilson & Porter.

Nath'l Harford testified to the payment about ten years ago, on execution to Josiah Stetson, a deputy sheriff, a note which defendant left in the office of Wilson & Porter. And it was proved that Robert Houston, who died 10 or 12 years ago, was until the latter part of his life, able to pay ten or twelve dollars.

Arvida Hayford testified that Perkins & Buck, who moved away from his neighborhood fourteen or fifteen years ago, had a pair of steers sold at auction to pay an execution which he understood was in favor of defendant; that it was fifteen or twenty years since.

The plaintiff had been notified to produce the books and dockets of said firm at the trial. They were not produced, the plaintiff alleging that he had them not, but that they were probably in possession of his late partner, William Stevens.

The Judge instructed the jury, " that the items in offset were not proved, unless they believed that the money was actually paid by the officers having the executions, to them, the said firm, or one of them, and that if they believed from the evidence that any of the debts in the schedule had been paid to the firm, they would not allow them towards the note unless they were satisfied that they had been received in payment of the note, or it had been agreed that they should be so applied. That the testimony proving that executions had been obtained and put into the hands of officers, and that the money had been paid to such officers, was not sufficient of itself to prove a payment to either of the firm, as the defendant might himself have legally received the money from the officers, or it might not have been collected from them."

The general rule with regard to the application of payments is, that when a person owes money upon several distinct accounts, he has a right to direct his payments to be applied to either as he pleases. If he pays money on his accounts gen-

erally, without appropriating it, the creditor may apply it as he pleases; if neither the debtor nor creditor make any specific application of the money so paid, the law will appropriate it according to the justice and equity of the case. 1 Mason, 338 ; 5 Mason, 85.

Payment to the plaintiff's attorney employed to collect the debt is as effectual as payment to the plaintiff himself.

So payment to the officer having the execution and while it is in force discharges the debtor. But mere payment to the officer by no means raises an obligation on the part of the attorney to pay the debt to the plaintiff. Something more must occur. The officer must have paid the money over to the attorney before such liability is to be raised against him.

The attorney is bound to execute business in his profession entrusted to his care, with a reasonable degree of care, skill, and despatch. If the client be injured by the gross fault, negligence, or ignorance of the attorney, the attorney is liable; but if he act with good faith, to the best of his skill, and with an ordinary degree of attention, he will not be responsible. The consequences attendant on the hasty neglect of an attorney in making a writ of attachment, are exhibited in *Varnum* v. *Martin,* 15 Pick. 440.

In one case, it has been held that an attorney at law, who collects money and neglects or refuses to pay it over to his client until sued for it, is entitled to no compensation for his professional services. *Bredin* v. *Ringland,* 4 Watts, 420.

This is not a suit on an attorney's bill, where costs were incurred through inadvertency and want of proper caution on the part of the attorney, where it would be a good defence to show such facts. But this is on a note of hand, payable on time with interest, and all the facts in connexion with the subject seem to have been presented to the consideration of the jury. In the case cited by the defendant's counsel, as to the obligation of the attorney to pursue the bail without fresh instructions, there appears to be a propriety, because it is the pursuit of judicial process, falling more directly under an attorney's cognizance.

In regard to the collection of executions, creditors frequently interfere, and if they do not prejudice the attorney's lien for his costs, there can be no objection to it. But the legal doctrine as to the necessity of specific appropriation of the payment of a sum of money to a particular subject, is not changed in consequence of the relation of attorney and client. The very fact that there must have been accruing costs on the collection of the demands in the schedule, would raise a belief that such costs were first to be paid.

*Exceptions overruled.*