Gertrude SOHN

v.

Louis BERNSTEIN.

Supreme Judicial Court of Maine.

July 2, 1971.

---

2. For interesting discussion of the history of the Mill Act see Bean v. Central Maine Power Co., 133 Me. 9, 173 A. 498.

land, Maine, from Cleveland, Ohio, where the daughter resided, a coffee percolator manufactured by Landers, Frary and Clark of New Britain, Connecticut. The yuletide gift was received by Mrs. Sohn through parcel post. On or about July 9, 1961 the plaintiff was using the percolator for the second time only when on the pouring of the first cup the cover fell off and hot coffee spilled over her body. The plaintiff suffered first and second degree burns. Defendant-counsel was hired within some 10 days of the accident and represented the plaintiff until the fall of 1965 when he was discharged.

The instant complaint seeks damages for malpractice. Plaintiff asserts negligence against her former attorney, claiming that he negligently failed to bring suit against Landers, Frary and Clark within the period of limitations provided by any pertinent statute applicable to her cause of action. The Justice below granted the defendant's motion for a directed verdict on the ground that at the time of plaintiff's discharge of her former attorney the statute of limitations in the State of Connecticut in cases of breaches of implied warranties was six years and, therefore, her cause of action for the original injury was not barred and there was no malpractice as a matter of law. Plaintiff's appeal from this ruling brings the matter before this Court. We sustain the appeal.

Childs & McKinley, Portland, for plaintiff.

Mahoney, Desmond, Robinson & Mahoney, by Lawrence P. Mahoney, Portland, for defendant.

Before DUFRESNE, C. J., and WEBBER, WEATHERBEE and POMEROY, JJ.

DUFRESNE, Chief Justice.

During the 1959 Christmas season plaintiff's daughter sent her mother in Port-

*Statutory limitations against
action in Connecticut*

The first issue submitted to this Court is, whether at the time defendant's services were terminated plaintiff could have initiated and maintained against the manufacturer, Landers, Frary and Clark, in the State of Connecticut her action to recover damages suffered by reason of the defective condition of the coffee percolator, notwithstanding the defense of limitations as provided in such cases under the statutes of that State.

The parties have agreed before the Court below that the pertinent Connecticut statutes provide that actions for tort be commenced within one year after the cause of action in tort accrued, while actions for breach of warranty be initiated within six years after the cause of action for breach of warranty accrued.

The record reveals that the defendant was employed by the plaintiff to act as her attorney in the prosecution of her claim against the manufacturer of the coffee percolator, Landers, Frary and Clark, a corporation doing business in the State of Connecticut, for damages recoverable as a result of the injuries sustained in the accident of July 9, 1961. By accepting the employment, the defendant impliedly agreed to use such skill, prudence, and diligence as lawyers of ordinary skill and capacity commonly possess and exercise in the performance of the tasks which they undertake and subjected himself to liability to his client for negligence in rendering his professional services.

"An attorney, by presenting himself to the community as such, impliedly engages and promises to those who employ him that he will faithfully and carefully transact the business which may be entrusted to him; and when this engagement is disregarded and promise violated by his unfaithfulness or inexcusable inattention, he, or his executor or administrator, must respond in damages to the injured party." Stimpson v. Sprague ad'x., 1830, 6 Me. 470.

■ Attorneys are under legal obligation to discharge their duty and to execute the business entrusted to them with a reasonable degree of care, skill and despatch and if the client is injured by the fault, negligence, or ignorance of the attorney, the attorney is liable. Smallwood v. Norton, 1841, 20 Me. 83; Wilson v. Russ, 1841, 20 Me. 421.

■ Legal malpractice may consist of the omission to perform a duty, in other words, the negligent failure to act. Ishmael v. Millington, 1966, 241 Cal.App.2d 520, 50 Cal.Rptr. 592.

■■■ If the plaintiff lost her cause of action by reason of the defendant's negligent failure timely to file suit within the period of the statutes of limitations, the parties do not question that such negligent omission to act would as a matter of law constitute a breach of the lawyer-client compact and be actionable in these proceedings. The proper test of the sufficiency of a complaint as against a motion to dismiss or of the plaintiff's evidence as against a motion for a directed verdict is whether the complaint sets forth facts or the evidence sustains proof of facts from which it can be deduced that the client could have recovered judgment absent the attorney's negligent omission to act. Hege v. Worthington, Park & Worthington, 1963, 209 Cal.App.2d 670, 26 Cal.Rptr. 132. When the facts are ascertained as they are in the instant case, the question of negligence or want of skill is a question of law for the Court. Gambert v. Hart, 1872, 44 Cal. 542, 552.

Since the defendant's discharge occurred more than one year after the accident, it is obvious as a matter of law that the defendant would be liable for plaintiff's loss in Connecticut of her cause of action in tort, unless at the time of the termination of the defendant's services an action was available to her in that State for breach of warranty. If the plaintiff under Connecticut law still had a valid and subsisting remedy at the time of the defendant's discharge from employment, then as a matter of law the defendant would not be liable in the instant action of malpractice. See, Huntington v. Rumnill, 1809, Conn., 3 Day, 390.

■ The plaintiff's action against the manufacturer of the coffee percolator, whether it be in tort for negligence or in contract for breach of warranty was a common law action and under Connecticut law the pertinent statute of limitations of the State of Connecticut as the law of the

forum would apply. Thomas Iron Co. v. Ensign-Bickford Co., 1945, 131 Conn. 665, 42 A.2d 145; Morris Plan Industrial Bank of New York v. Richards, 1945, 131 Conn. 671, 42 A.2d 147. This would be so even though the accident out of which the cause of action arose took place in the State of Maine, since Connecticut has not adopted the new concepts of relative "contacts" or "interests" in conflict-of-laws cases. See, Landers v. Landers, 1966, 153 Conn. 303, 216 A.2d 183.

■ We are aware, however, Connecticut will apply the general rule that in transitory actions such as are involved in the instant case, whether ex delicto or ex contractu, matters of substantive law are governed by the law of the place of injury, breach or transaction, whichever may be pertinent, and matters of procedure by the law of the place where the action is brought, i. e. the lex fori. See, Commonwealth Fuel Co. v. McNeil, 1925, 103 Conn. 390, 130 A. 794. Substantive law is that which creates, defines and regulates the rights and duties of the parties. It is the source of the obligation incurred or liability imposed and gives rise to the cause of action itself. Adjective law, on the other hand, pertains to and prescribes the practice and procedure, the legal machinery or mode of action whereby the obligation or liability arising under substantive law is enforced and made effective. Petty v. Clark, 1948, 113 Utah 205, 192 P.2d 589.

■ Whether a given question involves substance to be determined in accordance with foreign law or merely affects the remedy and is controlled by the law of the forum, is itself a matter for the determination of the forum court. The issue before the Court was whether, at the time of the defendant's discharge, the Connecticut courts were available for the prosecution of the plaintiff's cause of action. We will assume for our purposes, without intimating such is the law of this State, that the plaintiff at the time of her injury had a cause of action or right of redress against the manufacturer of the coffee percolator under Maine law both in tort for negligence and in contract for breach of warranty. The Connecticut courts would accept that plaintiff had a substantive right of action under Maine law but the enforcement of that right, whether it be viewed in tort for negligence or in contract for breach of warranty, would be determined in accordance with the remedial procedures available under Connecticut law.

■ The law of the forum (here Connecticut) determines whether the plaintiff's cause of action should be characterized as one in tort for negligence or in contract for breach of warranty or in the alternative at the suitor's election. Bank of United States v. Donnally, 1834, 8 Pet. 361, 8 L.Ed. 974; John Hancock Mutual Life Ins. Co. v. Yates, 1936, 299 U.S. 178, 57 S.Ct. 129, 81 L.Ed. 106; Hopkins v. Kurn, 1943, 351 Mo. 41, 171 S.W.2d 625; Anderson v. State Farm Mutual Automobile Ins. Co., 1946, 222 Minn. 428, 24 N.W.2d 836; Hall v. Copco Pacific, Ltd., 1955, 9th Cir., 224 F.2d 884; Hausman v. Buckley, 1962, 2d Cir., 299 F.2d 696; St. Louis-San Francisco Railway Co. v. Superior Court, 1969, 276 Cal.App.2d 762, 81 Cal.Rptr. 705; Restatement, Conflict of Laws, § 584.

Thus the rule of law applicable in Maine as expounded by this Court in Doughty v. Maine Central Transportation Company, 1944, 141 Me. 124, 39 A.2d 758, and Alropa Corp. v. Britton, 1936, 135 Me. 41, 188 A. 722, allowing the pleader a choice of remedy,

"It is the form of action adopted by the pleader, rather than the cause of action upon which it is based, which determines the period within which it may be commenced."

"If an injured party has a right to either of two actions, the one he chooses is not barred, because the other, if he had brought it, might have been."

"If the facts disclose both a breach of an implied contract and a tort, the appellant

may recover in debt or assumpsit, although the remedy in tort is barred by limitations * * *. Where doubt exists as to the nature of the action, courts lean toward the application of the longer period of limitations."

would not necessarily determine the applicable statute of limitations unless the Connecticut Court has adopted the same rule. It would seem that in Hickey v. Slattery, 1926, 103 Conn. 716, 131 A. 558, the Connecticut Court, in a complaint against a physician for malpractice in his failure to properly reduce and treat a fractured arm, did apply the same rule as would control in Maine and stated that if two distinct causes of action may arise out of one delict, each cause is governed by the statute of limitations appropriate to it.

We must, therefore, analyse plaintiff's factual situation after her injury in the use of the coffee percolator and determine whether under Connecticut law the underlying facts gave rise to two distinct causes of action, (the suggested test in *Hickey*, supra,) one in tort and one in breach of contractual warranties.

Plaintiff's instant complaint in malpractice alleges that her injuries were due to the negligence of the Connecticut manufacturer in that it permitted a defectively manufactured product to enter the channels of commerce and to remain on the market for purposes of sale to the public generally, when it knew or was charged with the knowledge that the reference coffee percolator was defective as manufactured, creating thereby an unreasonable risk of injury to the ultimate user. The complaint further specifies that the manufacturer's negligence consisted in selling a defective and dangerous instrumentality unsuitable for the purpose intended without any warning to the public by labels or otherwise of the dangerous characteristic of the article, while at all times it had, or was chargeable with, knowledge of its unsafe condition. The defendant argues that, even if the plaintiff's cause of action sounding in tort was barred by the Connecticut statute of

limitations relating to such actions, nevertheless, at the time of defendant's discharge, plaintiff still had available to her in the State of Connecticut a distinct action for damages based on breach of implied warranty, since the statute of limitations applicable to such an action was six years, as the parties have stipulated.

The evidence indicates that the percolator was sent to the plaintiff as a Christmas gift from her daughter who resided in Cleveland, Ohio. Delivery was made through parcel post sometime prior to December 25, 1959. The parties concede that this everyday commodity was manufactured by Landers, Frary & Clark, a Connecticut corporation. Beyond that, the record is silent. No allegation or proof was made indicating when the article was originally purchased and where. We do not know if the plaintiff's daughter directly bought the percolator or herself received it as a gift. If she did purchase it from some retailer, we have not been told where the purchase was made, in Ohio or perhaps in Connecticut.

It is undisputed, however, that no privity existed between the plaintiff-ultimate-user of the percolator and the manufacturer under the conceptual common-law use of that term in the field of contract liability for breach of implied warranties. The Uniform Commercial Code became effective in Connecticut on October 1, 1961, but by its very terms was made inapplicable to causes of action which had accrued prior to its effective date.

Prior to Hamon v. Digliani, 1961, 148 Conn. 710, 174 A.2d 294, no action could be maintained in Connecticut for injuries arising out of an alleged breach of warranty, either of merchantability or of use, without the essential element of privity of contract existing between the plaintiff ultimate user and the defendant manufacturer, Borucki v. MacKenzie Bros. Co., Inc., 1938, 125 Conn. 92, 3 A.2d 224. The Connecticut Legislature, prior to 1959, had extended the implied warranties of quality to mem-

bers of the purchaser's household (Cum. Sup.1939, § 1276e; Cum.Sup.1955, § 2858d) and had imposed an implied warranty of fitness of food and drink for consumption for the buyer and all persons for whom the purchase was intended (Cum.Sup.1955, § 2859d). In Hamon v. Digliani, supra, the Supreme Court of Errors of Connecticut held that the manufacturer or producer who put a commodity for personal use or consumption on the market in a sealed package or other closed container impliedly warranted to the ultimate consumer that the product was reasonably fit for the purpose intended and that it did not contain any harmful and deleterious ingredient of which due and ample warning had not been given. Lack of privity of contract was stated not to be a bar to suit under circumstances where the manufacturer or producer had made representations relied upon by the injured buyer of the product. The manufacturer or producer was held to strict accountability under his warranties.

The Superior Court of Connecticut has extended the doctrine of Hamon v. Digliani, supra. It sanctioned the maintenance of a cause of action for breach of warranty of safety and fitness for intended use against the manufacturer of an automobile by a gasoline station employee who was injured by reason of a defect in the manufacture of the automobile, despite the lack of privity of contract between the parties. Connolly v. Hagi, 1963, 24 Conn.Sup. 198, 188 A.2d 884.

In Garthwait v. Burgio, 1965, 153 Conn. 284, 216 A.2d 189, an action brought by the ultimate user against the manufacturer for breach of warranties of fitness and safety of its product was sustained, notwithstanding the absence of privity of contract. The Court spoke of the manufacturer's liability in this new field of law known as products liability, in manner as follows:

"*Where the liability is fundamentally founded on tort* rather than contract there appears no sound reason why the manufacturer should escape liability sim-

ply because the injured user, a party in the normal chain of distribution, was not *in contractual privity with it by purchase and sale.*" (Emphasis added.)

In *Garthwait*, supra, and in Rossignol v. Danbury School of Aeronautics, Inc., 1967, 154 Conn. 549, 227 A.2d 418, the Connecticut Court recognized the existence of a right of action sounding in tort and based on public policy for the protection of the ultimate user from harm rather than on the enforcement of any contractual rights. It approved the rule adopted in § 402A of volume 2 of the Restatement (Second) of Torts, entitled "Special Liability of Seller of Product for Physical Harm to User or Consumer." It looked upon the rule as one of strict tort liability as distinguished from liability predicated on contract or simple negligence.

In *Rossignol,* supra, the Court approved in full, comment m, of the Restatement (Second), 2 Torts § 402A:

"The rule stated in this Section does not require any reliance on the part of the consumer upon the reputation, skill or judgment of the seller who is to be held liable, nor any representation or undertaking on the part of that seller. The seller is *strictly liable* although, as is frequently the case, the consumer does not even know who he is at the time of consumption. *The rule* stated in this Section *is not governed by the provisions of the Uniform Sales Act, or those of the Uniform Commercial Code, as to warranties*; and it is not affected by limitations on the scope and content of warranties, or by limitation to 'buyer' and 'seller' in those statutes. Nor is the consumer required to give notice to the seller of his injury within a reasonable time after it occurs, as is provided by the Uniform Act. The consumer's cause of action does not depend upon the validity of his contract with the person from whom he acquires the product, and it is not affected by any disclaimer or other agreement, whether it be between the

seller and his immediate buyer, or attached to and accompanying the product into the consumer's hands. In short, *'warranty' must be given a new and different meaning* if it is used in connection with this Section. *It is much simpler to regard the liability here stated as merely one of strict liability in tort.*" (Emphasis added.)

Under the facts of the instant case, did the plaintiff whose cause of action in terms of strict products liability was barred by the one-year statutory limitations applicable to actions in tort have the alternate choice of bringing an action for damages based on the breach of a general implied warranty of fitness or suitability for intended use which, if maintainable, would have been, so the parties concede, within the unexpired six-year period provided by the statute of limitations applicable to causes of action arising out of breaches of warranty?

The Superior Court of Connecticut recognized the difficulty arising from the absence of a decision of the Supreme Court on the subject. In Rempe v. General Electric Company, 1969, 28 Conn.Sup. 160, 254 A.2d 577, the Court assumed that where a personal injury action is based on breach of warranty, the applicable statute of limitations is that governing tort actions rather than that governing contract actions. Since the action before the Court was found to be timely under the statutory limitations applicable to tort actions, there was no decision on the point at issue in the instant case. The Superior Court did, however, base its assumed ruling upon the decision of the Court of Common Pleas of Connecticut in Abate v. Barkers of Wallingford, Inc., 1967, 27 Conn.Sup. 46, 229 A.2d 366.

The facts in *Abate,* supra, arose after the enactment of the Uniform Commercial Code and the issue raised by the demurrer was whether the statute of limitations of three years applicable to tort actions or whether the four-year limitation provided by the Code respecting actions for breach of contracts of sale governed. The Court ruled as follows:

"The decision in *Rossignol,* supra, is a clear indication that the liability claimed by the plaintiffs against this third-party defendant is essentially a tort liability and must be so treated for the purpose of deciding the issues raised by the demurrer; and further that it is not properly within the confines of the implied warranty sections of the Uniform Commercial Code."

We are aware that the *Abate* Court is not a court of last resort, but its analysis of the Rossignol opinion parallels our view of the underlying rationale of the Supreme Court of Connecticut, by way of dictum, that a cause of action based upon strict product liability, where no privity of contract between the parties appears and where no reliance is alleged or shown by the user-plaintiff on the reputation, skill or judgment of the seller or manufacturer or on any representation on their part, is a tort liability and not one in contract accountability, and that such strict product liability claims are not governed by the provisions of the Uniform Sales Act or those of the Uniform Commercial Code as to warranties.

It seems to us that the Supreme Court of Connecticut, expressly accepting, as it did in *Rossignol,* the principles adopted by the American Law Institute as contained in the Restatement (Second) of Torts, clearly indicated, as stated by the Court in *Abate,* that the liability claimed by the plaintiff against Landers, Frary & Clark, the manufacturer of the coffee percolator, for personal injuries received on account of its original defect in manufacture, is in essence a tort action and not one in the contract field, regardless of whether the breach of duty upon which it is founded rests in terms of negligence or failure to comply with applicable implied warranties.

The plaintiff's cause of action, lying in tort, was the only action which the plain-

tiff had under the circumstances of her case. On that ground, the plaintiff's case is distinguishable from the facts in Hickey v. Slattery, supra, wherein the rationale is made to depend on the existence of two distinct causes of action arising out of one wrongful act.

We conclude that the six-year statute of limitations applicable to actions for breach of contract under Connecticut law was not applicable to the plaintiff's cause of action against Landers, Frary & Clark for personal injuries as a result of the use of their product. To the same effect, see, Raskin v. Shulton, Inc., 1966, 92 N.J.Super. 315, 223 A.2d 284.

### Possibility of prosecution of action in Maine

Finally, the defendant argues that at the termination of his contract of employment the plaintiff could have maintained in the State of Maine an action for damages based in tort for negligence or under strict products-liability concepts, since the period of six years provided by the Maine statute of limitations applying to tort actions had not yet expired. This presupposes in turn that the Connecticut manufacturer of the coffee percolator was subject to judicial process under Maine's so-called "long arm" statute (14 M.R.S.A. § 704).

This statute provides in pertinent part as follows:

"§ 704. Persons subject to jurisdiction

1. Causes of action. Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated in this section, thereby submits said person * * * to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any of said acts:

   \*   \*   \*   \*   \*   \*

B. The commission of a tortious act within the State resulting in physical injury to person or property;

\* \* \*."

This Court construed the reference statute in Foye v. Consolidated Bailing Machine Company, 1967, Me., 229 A.2d 196. In that case the nonresident defendant, charged with knowledge of the defects and failure to warn, was the vendor of a paper press which the plaintiff in the complaint had alleged to be dangerous and defective. The defendant-vendor had purchased the machine from the manufacturer and sold it to a Massachusetts company but at the request of the Massachusetts concern had shipped the paper press directly to the plaintiff's employer in Maine. Foye received his injuries while the machine was operated in Maine. We there said at page 198:

"For jurisdictional purposes from the time the dangerous instrumentality *set in motion by the defendant* enters the State and while it proceeds within the State to the point of injurious contact with the plaintiff, the defendant may properly be deemed to be 'acting' within the State." (Emphasis added.)

In the instant case, we do not have the *Foye* situation where the nonresident defendant directly sent the dangerous instrumentality into the State of Maine. Rather, our present facts more nearly parallel those in Gray v. American Radiator & Standard Sanitary Corp., 1961, 22 Ill.2d 432, 176 N.E.2d 761, except perhaps that Mrs. Sohn stands one step removed from the plaintiff consumer in *Gray*. Under the *Gray* reasoning, however, such difference would be immaterial, since the Court's rationale, based on the interpretation of the Illinois statute, was founded on the legislative meaning of the term "tortious act" as including as an inherent part of the whole tort the resulting injury.

In *Foye,* we recognized the difference in wording between the Illinois statute and the Maine statute and by way of dictum we stated the additional language in our statute after the words "[t]he commission of a tortious act within the State"—*"re-*

*sulting in physical injury to person or property*"—suggested "rather clearly that the 'tortious act' must be antecedent to and productive of the resulting injury," and would make it difficult for us to apply the reasoning relied upon in *Gray.*

We concluded in *Foye*

"We go no farther than the facts of this case. We treat the defendant *who makes the intentional direct shipment* of the dangerous and injury producing product to the consumer as 'acting' within the forum state."

"We neither intimate nor suggest what our holding would be where as in *Gray* the defendant has had no contact with this State prior to or apart from the resulting injury."

■ The legislatively extended reach of state jurisdiction over the person of absent foreign corporations and other nonresidents, to pass constitutional muster of due process, must needs require certain minimal contacts with the forum state. International Shoe Co. v. Washington, 1945, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95; McGee v. International Life Insurance Co., 1957, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223. We added in *Foye,* by way of cautionary advice in the interpretation of the "minimal contacts" requirement, the restrictive qualification of the rule made in Hanson v. Denckla, 1958, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283, which we cite again:

"The application of that rule will vary with the quality and nature of the defendant's activity, but it is *essential in each case* that *there be some act* by which the defendant *purposefully avails itself* of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." (Emphasis supplied.)

However minimal the contacts may be to comply with due process requirements, we note in the wording of our "long arm" statute the personal-aspect characteristic of the tortious act or activity in Maine to which the Legislature has narrowly anchored the applicability of the statute. The commission of a tortious act within the State must be by the nonresident "in person or through an agent." In *Foye,* we equated the nonresident's direct shipment of the dangerous instrumentality for delivery in Maine with the placing of that dangerous instrumentality in the hands of a citizen of this State and, upon subsequent resulting injury, with the personal commission of a tortious act within this State, "at least within the broad interpretation which we have said should be given to the 'long arm' statute."

Furthermore, our statute provides that by doing in person or through an agent any of the enumerated acts, such as the commission of a tortious act within the State, the nonresident submits his person to the jurisdiction of the courts of the State of Maine. The statutory rationale presupposes a purposeful act or activity on the part of the nonresident upon which an inference may logically arise that the nonresident has submitted his person to the jurisdiction of this State. Something more than the mere happening of an injury within the forum state arising out of a defectively manufactured product of a nonresident must appear to permit the inference; the purposeful act within the State of Maine which our statute requires means at least that the nonresident actor has made himself causally responsible personally or by agent for the presence of the injuring product within the State.

■ We rule that, before jurisdiction in personam can be obtained against a nonresident under our "long arm" statute by reason of a resulting injury in Maine from a dangerous instrumentality, it must appear the nonresident intentionally and actively participated in the act or activity that put the defective article in Maine. The bare assertion that the nonresident put its defective product "into the stream of commerce," without more, is insufficient under our statute. See, O'Brien v. Com-

stock Foods, Inc., 1963, 123 Vt. 461, 194 A.2d 568. From the record in the instant case, there is no showing that Landers, Frary & Clark was in any way causally responsible for the presence of the defective coffee percolator in Maine. Nowhere does it appear that it intended this product for Maine, nor that it actively participated in the chain of transactions that set the product on its way to Maine. We neither intimate nor suggest what our ruling would be if this Connecticut manufacturer were shown to be servicing the Maine marketing area indirectly through distributors it knew would reach the Maine market. We confine our decision to the facts of this case and to the issues as the parties have presented the same.

The entry will be

Appeal sustained.

MARDEN, J., sat at argument but retired before this opinion was adopted.